OPINION OF THE COURT
Levine, J.
Defendant was convicted, after a jury trial, of “depraved indifference” murder (Penal Law § 125.25 [2]) for the shooting death of Timothy Range. The sole issue before us is whether the evidence was legally sufficient to support the verdict.
Range and defendant were the boyfriends of two sisters, Monon Washington and Candace Johnson. Range and Monon were together for 10 years, and their union had produced two children. The relationship between Candace and defendant existed for about a year. The occasion for their being together on the day of the fatal shooting was a party celebrating the third birthday of Candace’s daughter at the family’s apartment in Brooklyn, where Candace, her daughter, mother and brother Terrence resided. Range arrived at the party in the late afternoon or early evening, and defendant followed at about 9:30 p.m.
The People’s case rested upon the testimony of Monon Washington and her mother, Rose Liburd. Monon testified that she and Range had a cordial relationship with Candace and defendant, and that Range and defendant got along and used to lift weights together. That evening, however, harsh words were exchanged in a hallway near the foyer entrance of the apartment when Range implied that defendant was unfaithful to Candace. From an adjoining room, Monon heard their voices raised and the sound of a scuffle, then Range telling defendant to step outside. She summoned Rose Liburd, who was the only actual eyewitness to the incident. Liburd first observed defendant walking through the entrance doorway from the hallway *376 where her two grandchildren were playing in the foyer, away from Range, who was behind the partially opened door. Then she saw defendant abruptly turn around, fire a gun pointed at Range’s chest and flee. The entire incident was over in a matter of seconds. Range collapsed after phoning 911 from the kitchen. He was taken by ambulance to a hospital where he expired.
The forensic evidence was that the bullet entered Range’s upper left chest, then traversed downward from front to back and left to right. It perforated Range’s left lung causing the extensive internal bleeding which ultimately resulted in his death. Gunpowder residue from around the holes in Range’s shirt and undershirt corresponding to the chest entrance wound indicated that the gun was fired not more than 12-18 inches from his chest.
Defendant testified that, during the confrontation described by the other witnesses, Range pulled a gun, they grappled for it and it accidentally discharged into Range’s chest.
The indictment charged defendant with one count each of intentional murder (Penal Law § 125.25 [1]) and depraved indifference murder, and various weapons possession offenses. As agreed to by the defense, the court charged manslaughter in the first and second degrees as lesser-included offenses. The jury was instructed to consider no additional homicide charge in the event that it found defendant guilty of one of the murder counts. Defendant was acquitted of intentional murder but convicted of depraved indifference murder and criminal possession of a weapon in the second degree. The Appellate Division affirmed defendant’s conviction.
Discussion
Under Penal Law § 125.25 (2), a person commits murder in the second degree when “[ujnder circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.” Defendant’s challenge to the sufficiency of the evidence to sustain his conviction of depraved indifference murder is twofold. First, he argues that the People’s proof was consistent only with an intentional killing and, thus, that there was no reasonable view of the evidence under which he could have been found not guilty of intentional murder and guilty of causing Range’s death recklessly — the culpable mental state required under Penal Law § 125.25 (2). Second, defendant *377 contends that the record is devoid of evidence of “circumstances evincing a depraved indifference to human life” to establish that requirement of murder under Penal Law § 125.25 (2). We disagree with both contentions, and find the evidence sufficient to sustain defendant’s conviction of depraved indifference murder.
Viewing the evidence in the light most favorable to the People, as we must, a rational jury could harbor a reasonable doubt that the homicide of Range was intentional — i.e., that defendant’s “conscious objective [was] to cause [Range’s death]” (Penal Law § 15.05 [1]). The two men were friends, had engaged in activities together and socialized because of their intimate relationships with the sisters. The shooting itself appeared to have been sudden, spontaneous and not well-designed to cause imminent death. Rose Liburd testified to first seeing defendant leaving Range’s presence in the hallway, then instantly reversing direction and firing the gun from behind the partly closed door separating the hallway from the entrance foyer. The victim stood behind the door.
“A: Poppy [defendant] walked out and Tim [Range] was just standing there, and no sooner than he walked out he turned right back around and came in and drew the gun. * * *
“A: His arm came around the door. When he stepped back in, his arm came around the door and he pulled the trigger. * * *
“A: He stepped off the step from the hallway into the foyer.
“Q: When you say off the step, do you mean there is a step there?
“A: Yes, there is a step right there. * * *
“A: He stepped off this step and he turned right back around and stepped back up and came with his arm through the door and shot him.”
Although the gun was discharged at point-blank range, the bullet only struck Range in his upper left chest. The trajectory of the bullet through Range’s body indicated that the gun was fired at an angle toward Range, a fact consistent with Rose Liburd’s description of defendant’s movements and Range’s position behind the door. The jury may also have taken into ac *378 count the preexisting good relations between defendant and Range, and concluded that this was an instantaneous, impulsive shooting — perhaps to disable or frighten Range, rather than to kill him. Thus, a jury reasonably could have found that defendant’s homicidal level of mental culpability was reckless rather than intentional.
It is noteworthy that défendant agreed that the court would charge manslaughter in the second degree as a lesser-included offense — in effect conceding that there was a “reasonable view of the evidence which would support a finding that the defendant committed [reckless homicide] but did not commit [intentional murder]” (CPL 300.50 [1]). Had the jury convicted defendant of the reckless homicide of manslaughter in the second degree, he would have been precluded from making the argument he makes here, that the People’s proof was only consistent with intentional murder (see id.; People v Borst, 232 AD2d 727, 728 [3d Dept 1996], lv denied 89 NY2d 940 [1997]; see also People v Ford, 62 NY2d 275, 283 [1984]).
Alternatively, defendant argues, and one of our dissenting colleagues agrees, that there was no reasonable view of the evidence to support a finding that defendant acted under circumstances evincing a depraved indifference to human life. We are unpersuaded. To the contrary, accepting the jury’s determination that the killing of Range was not intentional (see supra), defendant’s shooting into the victim’s torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish murder under Penal Law § 125.25 (2). Here, once it rejected intentional murder, the jury (which concededly was properly instructed) could reasonably conclude that defendant’s conduct was so manifestly destined to result in Range’s death as to deserve the same societal condemnation as purposeful homicide (see People v Register, 60 NY2d 270, 274 [1983], cert denied 466 US 953 [1984]; 2 Encyclopedia of Crime and Justice, at 858 [1983] [in “general, the distinguishing feature of the (modern definitions of murder) is an intent to kill or a disregard of so plain a risk of death to another that it is treated as the equivalent of an intent to kill”] [emphasis supplied]).
Judge Rosenblatt concludes, however, that even the highest level of risk from the perpetrator’s conduct — making death all but inevitable — would be insufficient alone, because the “unchanging core requirement” of depraved indifference murder is proof of an additional mens rea element to recklessness, that is, the defendant’s “uncommonly evil and morally perverse *379 frame of mind” (Rosenblatt, J., dissenting, 98 NY2d at 396). Requiring not only extreme risk but also an unusually evil mental state is necessary, Judge Rosenblatt says, in order to prevent the merger of intentional and depraved indifference murders (see Rosenblatt, J., dissenting, 98 NY2d at 403-404).
Such a requirement is not consistent with our precedents in construing and applying the lead-in phrase “under circumstances evincing a depraved indifference to human life” in the definition of reckless murder under the revised Penal Law of 1967. The meaning of the phrase was directly debated in People v Register. There, the proof was that defendant arrived at a crowded bar room with a loaded handgun, drank continuously for four hours and announced several times that he was “going to kill somebody tonight” (60 NY2d at 275). After his companion got into an argument with another patron named Mitchell, defendant fired at Mitchell but missed, striking another patron. He then shot Mitchell in the stomach at close range, injuring but not killing him, and turned and fired at yet a third patron, resulting in that person’s death.
The issue before the Court in Register was whether the defendant’s intoxication could negate the demonstration of depraved indifference to human life elevating the homicide from manslaughter to murder. The dissenters in Register construed the phrase as referring to a mens rea element additional to recklessness. Hence, they concluded that the jury should have been instructed to consider whether defendant was so drunk as to be incapable of consciously being indifferent to the risks his conduct entailed. The Register majority, however, focused on the first words of the phrase, referring to “circumstances evincing” depraved indifference, and concluded that
“[t]his additional requirement refers to neither the mens rea nor the actus reus. If it states an element of the crime at all, it is not an element in the traditional sense but rather a definition of the factual setting in which the risk creating conduct must occur — objective circumstances which are not subject to being negatived by evidence of defendant’s intoxication” (id. at 276 [emphasis supplied]).
Thus, the Register majority explained that the requirement of circumstances evincing a depraved indifference to human life under Penal Law § 125.25 (2) murder focuses not on the subjective intent of the defendant, “but rather upon an *380 objective assessment of the degree of risk presented by defendant’s reckless conduct” (id. at 277 [citations omitted]). As Register instructs, objective circumstances of exceptionally high, unjustified risk of death constitute the primary means by which the Legislature differentiated between the reckless state of mind sufficient to establish the mental culpability of manslaughter and the extreme recklessness of murder under Penal Law § 125.25 (2).
Contrary to the repeated assertions of Judge Rosenblatt’s dissent, the majority writing in Register does not hold that “ordinary recklessness” is sufficient to establish depraved indifference murder (see Rosenblatt, J., dissenting, 98 NY2d at 397, 398, 400, 408, 412). Register requires a significantly heightened recklessness, distinguishing it from manslaughter in two ways. First, “in a depraved mind murder the actor’s conduct must present a grave risk of death whereas in manslaughter it presents the lesser substantial risk of death” (60 NY2d at 276). Then, it also requires proof of circumstances manifesting a depraved indifference to human life, focusing the inquiry, as we have seen, “upon an objective assessment of the degree of risk” which “converts the substantial risk present in manslaughter into a very substantial risk” (id. at 277 [emphasis in original]). Thus, Register concludes, extreme recklessness — the conscious disregard of circumstances revealing the exceptional risk of death from the defendant’s conduct — was the predominant means chosen by the Legislature to distinguish murder under Penal Law § 125.25 (2) from manslaughter and make it equivalent in grade to intentional murder:
“In sum, the statutory requirement that the homicide result from conduct evincing a depraved indifference to human life is a legislative attempt to qualitatively measure egregiously reckless conduct and to differentiate it from manslaughter” (id. at 279 [emphasis supplied]).
Later cases have consistently followed and by now have made settled law of Register’s conclusion that the crux of murder under Penal Law § 125.25 (2) is recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant’s conduct. We repeated verbatim the Register interpretation of the opening phrase of the statute in People v Gomez (65 NY2d 9, 11 [1985] [“circumstances evincing a depraved indifference * * * involves ‘an objective assessment of the degree of risk presented by *381 defendant’s reckless conduct’ ”]) and in People v Roe (74 NY2d 20, 24 [1989] [same]). Judge Rosenblatt would have us overrule Register and adopt the position of the dissenters in that case (see Rosenblatt, J., dissenting, 98 NY2d at 397-398, 415).
There may, of course, be other circumstances manifesting depravity — including the brutal, barbaric or savage nature of a defendant’s reckless conduct — as relied upon in the dissents. That would be especially relevant where the risk of death merely meets the statutory threshold of being grave. These, however, are only “collateral to the basic proposition of known risk” of death (Gegan, A Case of Depraved Mind Murder, 49 St John’s L Rev 417, 450 [1974]). They are not necessary when the risk of death is manifestly extreme and unjustified. Then, a defendant’s disregard of the risk elevates and magnifies the degree of recklessness, itself establishing the required circumstances evincing depraved indifference to human life. People v Roe, a Russian roulette case, perfectly illustrates that reckless disregard of an unjustified extreme risk of causing death can establish the necessary manifestation of depravity, without proof that the defendant’s state of mind was also in some way “uncommonly evil.” Roe would also have to be overruled if the dissenters are correct here.
Register’s focus on an objective assessment of an exceedingly high degree of risk that the defendant created and ignored, which differentiates reckless murder from reckless manslaughter, is completely consistent with the English common law antecedents of depraved mind murder, as well as with modern criminal law theory. At common law, a homicide with “malice aforethought” was murder, and included not only intentional and felony murders but a killing resulting from extremely reckless conduct (see 2 Encyclopedia of Crime and Justice, at 859). “ ‘[M] alice’ was ‘implied’ when the act was so reckless as to evince a ‘heart regardless of social duty and fatally bent on mischief ” (Wechsler and Michael, A Rationale of the Law of Homicide: I, 37 Colum L Rev 701, 703 [1937]). Reckless murder was distinguished from manslaughter “by the relatively greater danger of the act and the consequently greater indifference to the safety of others manifested by it” (id. at 709-710 [emphasis supplied]).
Modern scholarship on the law of homicide is also consistent with Register and its progeny regarding reckless murder. W.R. LaFave and A.W. Scott, Jr. posit a continuum of risks from homicidal behavior, forming the basis to distinguish lower grades of homicide from murder (2 LaFave and Scott, Substantive Criminal Law § 7.4, at 200):
*382 “Grossly negligent conduct, or reckless conduct, which results in death may serve as the basis for manslaughter liability, but it will not do for murder.
“For murder the degree of risk of death * * * must be more than a mere unreasonable risk, more even than a high degree of risk. Perhaps the required danger may be designated a Very high degree’ of risk to distinguish it from those lesser degrees of risk which will suffice for other crimes.”[1]
The American Law Institute’s Model Penal Code is especially instructive. Our Penal Law Revision Commission, having drafted and proposed the 1967 revised Penal Law, acknowledged its special debt to the Model Code, pointing out that the Code’s chief reporter, Professor Herbert Wechsler, was also a member of the Commission (see NY St Temp Commn on Revision of Penal Law and Criminal Code, Proposed NY Penal Law, Commission Foreword, at V-VI [1964]). The Model Penal Code’s version of reckless murder is a homicide “committed recklessly under circumstances manifesting extreme indifference to the value of human life” (Model Penal Code § 210.2 [1] [b] [1980]).[2]
As the commentary to the Model Penal Code explains, the culpability for non-intentional murder is extreme recklessness — i.e., the disregard of such a high degree of risk created by the actor’s conduct that it “cannot fairly be distinguished in grading terms from homicides committed purposely or knowingly” (Model Penal Code § 210.2, Comment 4, at 21). That is because
“purposeful or knowing homicide demonstrates precisely such indifference to the value of human life. Whether recklessness is so extreme that it demonstrates similar indifference is not a question, it is submitted, that can be further clarified. It must be left directly to the trier of fact under instructions which make it clear that recklessness that can fairly be assimilated to purpose or knowledge *383 should be treated as murder and that less extreme recklessness should be punished as manslaughter” (id. at 22).
Nowhere in these modern formulations of depraved mind or depraved indifference murder is there a requirement that, in addition to the extremely reckless nature of the homicidal conduct, there must also be proof in some other sense of an “uncommonly evil and morally perverse frame of mind” (Rosenblatt, J., dissenting, 98 NY2d at 396), in order to distinguish the crime from intentional murder or manslaughter.[3] Indeed, not once in any of these texts is there a hint of agreement with the dissents here and in Register that the depraved or extreme indifference standard imposes an evil mind mens rea additional to “egregious” recklessness.
We disagree with Judge Rosenblatt’s suggestion that Darry v People (10 NY 120 [1854]) continues to provide the bedrock of our reckless murder jurisprudence. The previous discussion demonstrates that our contemporary statutory and decisional law of that form of murder leaves Darry far behind. In Darry, the defendant was convicted of depraved mind murder of his wife, for inflicting severe blows to her head and stomach with his fist and a chair over a sustained period of three days, resulting in her death. The Darry majority’s apprehension that an affirmance would obliterate the distinction between “depraved mind” murder and manslaughter (see 10 NY at 148) — not the distinction between such murder and intentional murder— caused it to impose two substantive requirements in addition to extreme recklessness, neither of which was mandated at common law (see Gegan, A Case of Depraved Mind Murder, 49 St John’s L Rev at 427-431), and neither of which even arguably applies today. They were that the conduct causing death must be “aimed at no one in particular” and must “endanger! ] indiscriminately the lives of many” (Darry, 10 NY at 146). Both are entirely obsolete under the current statute. The first requirement, that the reckless conduct must not be directed at a particular person, was effectively removed, at least as early as People v Kibbe (35 NY2d 407 [1974]). The second requirement was summarily declared dead in People v Poplis (30 NY2d *384 85, 89 [1972]) as having been “subsequently corrected by amendment.” Poplis itself is distinguishable from Darry only in that the Poplis victim was the defendant’s stepchild rather than his wife, a distinction without a substantive difference. Undisputably, today, Darry’s conviction would be affirmed.
Thus, the properly framed issue before us is whether, on this record, based on an objective assessment of the risk defendant recklessly created and disregarded, the likelihood of causing death from defendant’s conduct was so obviously severe that it evinced a depraved indifference to human life. Surely, pointing a gun at Range, without the slightest justification, discharging it within not more than 18 inches of his body and striking him in the chest, would permit a jury rationally to conclude that defendant demonstrated an indifference to human life so depraved as to be deserving of the same punishment as intentional murder; that it was virtually a knowing, although not intentional, homicide.[4] Defendant’s disregard of such an exceedingly high likelihood that his conduct would result in Range’s death distinguishes his culpability from the degree of recklessness needed to establish the mental element of second degree manslaughter.
That his conduct involved such a high risk of death that it could also lead to the conclusion that it was intentional supports rather than detracts from characterizing it as evincing depraved indifference to human life. As the commentary to the Model Penal Code cogently points out, purposeful homicide itself is the ultimate manifestation of indifference to the value of human life.
Nevertheless, the two murder crimes are by definition clearly distinguishable with respect to their differing mental states, and the Register formulation of depraved indifference murder does not at all blur that distinction. Adding further mens rea elements or substantive requirements of subjectively defined characteristics of the defendant’s acts will only confuse rather than clarify. Juries properly instructed are capable of making the distinction between the two crimes. The appropriate judicial safeguard against any such merger is the traditional one provided by statute and decisional law, employed here — an *385 examination of the record to determine whether there is any reasonable view of the evidence which would permit a jury rationally to acquit of intentional murder and convict of depraved indifference murder. Neither the defendant nor the dissenters have demonstrated its inadequacy.[5]
As this case demonstrates, the trial court was well aware of the law on depraved indifference murder — this is not a new invention since Register. Further, this jury was instructed both as to the severity and the gradations of the crime. Clearly, there was no “unfairness” as to this defendant (see Rosenblatt, J., dissenting, 98 NY2d at 406). The court explained to the jury that generally reckless criminal conduct is regarded “less serious and blameworthy than a crime committed intentionally, but when reckless conduct is engaged in under circumstances evincing a depraved indifference to human life, the law regards that conduct as so serious, so egregious, as to be the equivalent of intentional conduct.”
Moreover, on the facts presented here, viewed in a light most favorable to the People, there is a valid line of reasoning by which the jury could have found defendant guilty of depraved indifference murder. The firing of a loaded gun in an enclosed space within 18 inches of another person was undoubtedly imminently dangerous and presented a grave risk of death. We are persuaded, moreover, that defendant, like the close-range shooter in Roe, acted in objective circumstances manifesting depraved indifference. Defendant felt insulted by his victim, a person known to him; they were both celebrating the birthday of the three-year-old daughter of defendant’s paramour. *386 Instead of amicably settling their dispute, defendant — with at least one other person (the eyewitness) in the hallway— spontaneously turned, his arm came from around the door, he pointed the gun in the direction of the victim who was standing behind the door, and he pulled the trigger. The bullet hit the victim in the left upper chest and moved in a downward trajectory. Defendant fled. On these facts, the jury could reasonably have concluded that defendant’s conduct was either reckless and depraved, or intentional. The jury chose the former, and, as there is evidence in the record to support that determination, we must uphold it.
For all of the foregoing reasons, the order of the Appellate Division should be affirmed.
*387 [[Image here]]

. LaFave and Scott also agree with Register’s holding that “drunkenness does not negative a depraved heart by blotting out consciousness of risk” (see id. at 205).

. The influence of this formulation in the Model Penal Code on the definition of reckless murder in Penal Law § 125.25 (2) has also been pointed out (see Model Penal Code § 210.2, Comment 4, at 26; 2 LaFave and Scott, Substantive Criminal Law § 7.4, at 201 & n 12).

. The Model Penal Code commentary expressly disclaims any mens rea requirement overlaying its standard of extreme recklessness. The defendant does not “need [to] be aware that his [or her] state of mind constitutes recklessness” (Model Penal Code § 210.2, Comment 4, at 22 n 37). That duplicative awareness was the position of the Register dissenters, which Judge Rosenblatt would have us adopt.

. It is also worth noting that while the Model Penal Code defines murder in its primary form as a homicide committed “purposely or knowingly” (Model Penal Code § 210.2 [1] [a]), we limit that form of murder to a homicide committed “[w]ith intent to cause the death” (Penal Law § 125.25 [1]). The Register majority formulation would cover such a homicide, even in the absence of proof of the existence of some other immoral mens rea.

. In this regard it is noteworthy that statistics for the same years as those cited in the appendix to Judge Rosenblatt’s dissent do not support his contention that, “by diverting the jury to consider depraved indifference murder, trial courts * * * will mislead jurors into believing that depraved indifference murder is a milder charge readily available either when intentional murder has not been proved or as a means of extending a measure of leniency” (Rosenblatt, J., dissenting, 98 NY2d at 406). To the contrary, the statistical evidence establishes that the proportion of depraved indifference convictions has remained essentially stable, despite the increase in so-called depraved indifference “companion counts” in intentional murder cases (see Division of Criminal Justice Services, Indictment Statistical System, “NYS Indictments Containing PL 125.25 (1) and 125.25 (2) Counts (1989-2001)” [June 2002] [reproduced in Appendix]).
The number of indictments itself is not surprising. In 1990, the statute was changed to add a new category of depraved indifference murder of children. Also, at the presentation stage, the prosecutor may not have a developed theory of the case, and therefore might well seek both charges of intentional and depraved murder, which are narrowed at the time of trial.