100 N.Y.2d 253 (2003)
792 N.E.2d 1060
762 N.Y.S.2d 572
THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant,
v.
RAVIE HAFEEZ, Appellant-Respondent.
Court of Appeals of the State of New York.
Argued April 30, 2003.
Decided June 10, 2003.
*254 Roger Bennet Adler, P.C., New York City (Roger Bennet Adler of counsel), for appellant-respondent.
*255 Richard A. Brown, District Attorney, Kew Gardens (John M. Castellano and Roni C. Piplani of counsel), for respondent-appellant.
Chief Judge KAYE and Judges SMITH, WESLEY and GRAFFEO concur with Judge CIPARICK; Judge ROSENBLATT concurs in result in a separate opinion; Judge READ dissents in part and votes to additionally reinstate defendant's conviction for murder in the second degree in another opinion.

*256 OPINION OF THE COURT
CIPARICK, J.
We recently held in People v Sanchez (98 NY2d 373 [2002]) that, in the circumstances presented in that prosecution, a jury could reasonably find defendant's homicidal level of mental culpability to be reckless rather than intentional. We are once again faced with the same question, but inasmuch as there is no record support here for the jury's decision that defendant's conduct, or that of his codefendant, was reckless and depraved rather than intentional, the jury's finding of depraved indifference murder cannot be upheld.
In January 1999, defendant and his close friend and housemate, the codefendant, became involved in a confrontation with the deceased at a local bar in Queens. The deceased threw a pool ball at codefendant, injuring his eye. Months later, defendant plotted with codefendant and a third person to lure the victim out of the same Queens bar. When he came out, defendant pushed the victim up against a wall, then stepped aside to allow codefendant to take over. The men struggled and codefendant administered the fatal knife wound to the heart. Defendant and codefendant then drove away from the scene in *257 defendant's van, stopping along the way to allow the codefendant to get out and toss the knife handleall that remained of the murder weaponinto a sewer.
In the subsequent police investigation, defendant stated that codefendant had told him earlier in the evening that he was carrying a knife and had showed it to defendant while they were waiting for the victim to come out of the bar. Defendant stated, however, that he did not know his friend was actually going to use the knife and, moreover, did not learn that the victim had been stabbed until after he and codefendant left the scene. Although defendant initially denied knowledge of the knife's whereabouts, he eventually led police to the sewer where the handle was recovered. The remaining portion of the knife was later found at the scene of the crime.
A grand jury indicted defendant and codefendant on two counts of second degree murder, charging both intentional murder (Penal Law § 125.25 [1]) and depraved indifference murder (Penal Law § 125.25 [2]). They were also charged with conspiracy in the fourth degree, tampering with physical evidence, criminal possession of a weapon in the fourth degree and hindering prosecution in the first degree. At trial, the prosecution's murder case against defendant was premised on a theory of accomplice liability. The jury acquitted defendant on the intentional murder charge, but found him guilty of depraved indifference murder. The jury also convicted defendant on the conspiracy, tampering and hindering prosecution charges, but acquitted him on the charge of criminal possession of a weapon.[1]
On defendant's appeal, the Appellate Division reversed the conviction for depraved indifference murder (295 AD2d 624 [2002]). In the Court's view, the evidence with respect to depraved indifference murder was legally insufficient to establish defendant's guilt of that crime. The Court also reversed the conspiracy and hindering prosecution convictions, concluding that there was no evidence establishing either that defendant planned conduct which would constitute a class A felony or that defendant rendered criminal assistance to a person who committed a class A felony. The verdict was otherwise affirmed. A Judge of this Court granted leave to appeal to both the People, who appeal the reversal of the depraved indifference murder and conspiracy convictions, and the defendant, who appeals the one remaining conviction for tampering with *258 physical evidence. We now modify, affirming as to the depraved indifference and tampering counts and reinstating the conviction for conspiracy.
In our view, the Appellate Division properly reversed the conviction for depraved indifference murder. As developed at defendant's trial, no reasonable view of the evidence establishes codefendant's guilt of depraved indifference murder.[2] The People argue that defendant is guilty of depraved indifference murder because, viewing the evidence in the light most favorable to the People, as we must, defendant was aware of the grave risk that codefendant would use the knife and disregarded that risk by helping to lure the victim out of the bar and pushing him up against a wall, exposing him to his friend's deadly attack. However, defendant's guilt is premised upon a theory of accomplice liability and under such a theory, defendant can be guilty of depraved indifference murder only if he intentionally aided codefendant in commission of the crime and shared the codefendant's culpable mental state (see People v Brathwaite, 63 NY2d 839 [1984]; Penal Law § 20.00).[3]
The trial evidence concerning codefendant's conduct was consistent with intentional murder as opposed to depraved indifference murder (see People v Sanchez, 98 NY2d 373 [2002]). Here, codefendant plotted his revenge for months in advance and effectuated his plan on the night of the stabbing by a scheme intended to place the victim in a position where he would be vulnerable to attack. Codefendant concealed a knife in his sleeve poised to slip into his hand. The plan culminated in a single deliberate wound to the chest that perforated the victim's heart. It was a quintessentially intentional attack directed solely at the victim.
*259 To meet their burden for depraved indifference murder, the People must show that defendant's acts were "imminently dangerous and presented a very high risk of death to others" (see People v Register, 60 NY2d 270, 274 [1983]; People v Russell, 91 NY2d 280 [1998]). That burden was met in Sanchez, which involved the sudden shooting of a victim by a defendant who reached around from behind a door and fired into an area where children were playing, presenting a heightened risk of unintended injury. Here the actions of both defendants were focused on first isolating, and then intentionally injuring, the victim. From this record there exists no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder. The "heightened recklessness" required for depraved indifference murder was simply not present (see Sanchez, 98 NY2d at 380). Thus the order of the Appellate Division reversing the conviction for depraved indifference murder was proper.
We disagree, however, and reverse the Appellate Division's holding with respect to the conspiracy conviction. Under Penal Law § 105.10 (1), the People must show that defendant agreed to engage in or cause conduct that constitutes a class B or class C felony. In this regard the Appellate Division applied an incorrect requirement when it concluded that the People failed to prove conduct constituting a class A felony. The evidence here was sufficient to establish that defendant intended to cause, and in fact did cause, serious physical injury to the victim through an attack with a deadly weapon. Thus, defendant's conduct, in concert with codefendant, could amount to a conspiracy to commit the class B felony of assault in the first degree (see Penal Law § 120.10 [1]).[4] In connection with the conspiracy charge, the jury was instructed on the elements of first degree assault and the requirement of an overt act. On remittal, the Appellate Division will have to consider whether the evidence supports the jury's conclusion that defendant conspired to commit conduct constituting a class B felony.
Finally, we uphold defendant's conviction for tampering with physical evidence. As it relates to the facts of this case, a *260 person is guilty of tampering when, believing that physical evidence is about to be used in a prospective official proceeding, he intentionally suppresses such evidence through an act of concealment (see Penal Law § 215.40 [2]). There was sufficient evidence adduced at trial that defendant believed that codefendant intended to discard the weapon used in the stabbing and acquiesced in the request to stop his van to give his friend an opportunity to toss what remained of the knife into a sewer.
Defendant's remaining arguments, regarding improper evidentiary rulings by the trial court and prosecutorial misconduct, are without merit.
Accordingly, the order of the Appellate Division should be modified by reinstating the conviction for conspiracy in the fourth degree and remitting to the Appellate Division for consideration of the facts and, as so modified, affirmed.
ROSENBLATT, J. (concurring).
I concur, insofar as the Court concludes that defendant's actions did not constitute depraved indifference murder. I also agree with the Court's determinations as to conspiracy and tampering with physical evidence.
Given People v Sanchez (98 NY2d 373 [2002]), I recognize and applaud the Court's conclusion that the case before us involves actions bespeaking intentional conduct rather than heightened recklessness. In this manner, the Court is limiting Sanchez by properly rejecting the incongruous notion that an intentional killing can reflect depraved indifference. It is reassuring, therefore, that there are now six Judges of this Court who recognize that even under Sanchez (with which I have disagreed) depraved indifference murder does have its limits. I write separately to emphasize that, in my view, depraved indifference murder was not proven in this case for reasons I expressed in my dissent in Sanchez (98 NY2d at 394-416), notably, that the critical element in depraved indifference murder is not recklessness, but depraved indifference. Because the proof was legally insufficient to establish depraved indifference, I would affirm the order of the Appellate Division, as modified.
READ, J. (concurring in part and dissenting in part). I disagree with the majority's conclusion that there is no record support for the jury's decision that defendant's and codefendant's conduct was reckless and depraved rather than intentional. Accordingly, I respectfully dissent from that part of the Court's opinion affirming the Appellate Division's reversal of the depraved indifference murder conviction.
*261 The jury convicted defendant of depraved indifference murder under an accomplice liability theory (see Penal Law § 20.00). The People, therefore, had to show that defendant intentionally aided his codefendant, and that they shared the same state of mind when committing the crime (see People v Sanchez, 98 NY2d 373 [2002]; see also People v Brathwaite, 63 NY2d 839, 842 [1984]). Generally, evidence of a "single deliberate wound to the chest that perforated the victim's heart" (majority op at 258), following months of plotting revenge, is consistent only with intentional murder, as the majority points out. But in this case the jury also heard testimony at trial consistent with depraved indifference murder.
Defendant testified, and the People introduced several postarrest statements that he made to law enforcement officials and other witnesses. He consistently claimed that he and codefendant never intended to kill the victim. Rather, as the Appellate Division noted, "defendant and a friend [codefendant] lured the victim out of a bar, planning to beat him" (People v Hafeez, 295 AD2d 624, 624 [2d Dept 2002]). Additionally, defendant the only witness to the murderdescribed a quick moving fistfight. The jury heard that, after defendant shoved the victim against a wall, codefendant was "all over" the victim for about 30 seconds, throwing punches. After that, the victim pushed his way back into the bar. Moreover, in addition to the knife wound to the chest, the victim suffered a small knife wound on the top of his head. This fact bolsters defendant's account of a melee, not a planned murder.
While my colleagues may disbelieve defendant's testimony, the jurors apparently credited at least some of it. After all, by acquitting of intentional murder they expressly found that defendant and codefendant did not have a "conscious objective * * * to cause" (People v Sanchez, 98 NY2d at 377, quoting Penal Law § 15.05 [1]) the victim's death. The jury also convicted of a conspiracy premised on intending to cause serious physical injury, not death. Thus, viewing defendant's testimony in the light most favorable to the People (i.e., the jurors believed that he and codefendant intended "only" to stab the victim, whose death resulted from the half-minute struggle that ensued after they ambushed him, not from an immediate, calculated killing thrust to the heart), "a rational jury could harbor a reasonable doubt that the homicide * * * was intentional" (People v Sanchez, 98 NY2d at 377). Certainly, the jurors heard no testimony that the stabbing occurred immediately, or that codefendant aimed for the victim's chest.
*262 Further, a rational jury could have concluded that codefendant committed depraved indifference murder. Codefendant, armed with a nine-inch steak knife, carried out a plan designed to lure the unsuspecting victim outside and neutralize his size and weight advantage. Arguably, setting upon a momentarily vulnerable victim with a nine-inch knife intending to injure, but not to kill, was as "imminently dangerous and presented a[s] grave [a] risk of death" as "[t]he firing of a loaded gun in an enclosed space within 18 inches of another person" (id. at 385). Codefendant, therefore, acted with the "extreme recklessness" (id. at 380) necessary for depraved indifference murder.
Besides possessing the necessary mens rea, "based on an objective assessment of the risk [co]defendant recklessly created and disregarded, the likelihood of causing death from [co]defendant's conduct was so obviously severe that it evinced a depraved indifference to human life" (id. at 384). In fact, "objective circumstances manifesting depraved indifference" (id. at 385) that we identified in Sanchez are similar to circumstances here. There, we noted that the "[d]efendant felt insulted by his victim" and "[i]nstead of amicably settling their dispute" (id. at 385, 386), fired a gun at his chest. Here, there was evidence that defendant and codefendant both "felt insulted" (id. at 385) by the victim's earlier altercation with them, and they certainly did not settle their dispute "amicably" (id. at 386); instead, they plotted to entice their victim outside with a bogus story designed to ensure that he would emerge from the bar alone and unsuspecting.
Additionally, given the victim's size advantage over codefendant, it was likely that he always intended to use the knife hidden in his sleeve. Surely, codefendant could not have expected the physically larger and stronger victim not to fight back. Codefendant ignored the risk that a struggle would occur while he was wielding the knife, which (the jurors could have reasonably concluded) might result in a misdirected or wild fatal thrust. Alternatively, the jurors could have rationally concluded that codefendant, bent on revenge, simply did not care whether he wounded his victim in a life-threatening area of his body; i.e., although codefendant may have intended "only" to wound, he paid no heed whether the wound might result in death.
To support the conclusion that the evidence was consistent with intentional murder only, the majority emphasizes that this "was a quintessentially intentional attack directed solely at the victim" (majority op at 258). Also, the majority suggests *263 that the People met their burden for depraved indifference murder in Sanchez because the defendant there shot "into an area where children were playing, presenting a heightened risk of unintended injury" (majority op at 259). In Sanchez, however, we made clear that depraved indifference murder requires neither that the "conduct causing death * * * be `aimed at no one in particular'" nor that the conduct "`endanger[] indiscriminately the lives of many'" (id. at 383, quoting Darry v People, 10 NY 120, 146 [1854]). While prior versions of depraved indifference murder may have had those two requirements, "[b]oth are entirely obsolete under the current statute" (People v Sanchez, 98 NY2d at 383).
Further, we have never intimated that a conviction for depraved indifference murder can stand only if the defendant had not intended to injure the ultimate victim. To the contrary, we have upheld depraved indifference murder convictions where there may have been intent to injure the victim so long as the defendant did not have a "conscious objective * * * to cause [the death]" (id. at 377) of that victim (see e.g. People v Poplis, 30 NY2d 85, 87 [1972] [baby's death "caused by repeated physical beatings by defendant" over several days]; see also People v Kibbe, 35 NY2d 407 [1974] [defendants abandoned intoxicated robbery victim on side of road on freezing night]).
Thus, it is of no moment that the attack here may have been intentional. What the jurors had to determine was whether codefendant committed the "offense" of depraved indifference murder during the attack. An "offense" is premised on "conduct" (see Penal Law § 10.00 [1]), which in turn consists of an "act" (a "bodily movement" [Penal Law § 15.00 (1)]) and associated mens rea (Penal Law § 15.00 [4]).
The codefendant may have intentionally thrust his knife at the victim's chest. Given the struggle that was occurring with the larger and stronger victim, however, it was not irrational for the jurors to conclude that codefendant lacked the conscious objective of causing death (see People v Sanchez, 98 NY2d at 377) when he acted. Indeed, the jurors could have rationally concluded that: codefendant was swinging wildly; the victim moved and codefendant hit an area at which he had not taken aim; the victim may have deflected codefendant's arm; or codefendant simply did not care where the knife struck the victim as long as he managed to stab him. Accordingly, when codefendant made the "bodily movement" (Penal Law § 15.00 [1]) that resulted in the stab wound, the evidence *264 viewed in the light most favorable to the People allowed the jurors rationally to conclude that codefendant's state of mind with respect to murder was not intentional, but rather was "extreme[ly] reckless[]" (People v Sanchez, 98 NY2d at 380).
Because I believe that there is sufficient record support for the jury's conclusion that codefendant committed depraved indifference murder, I would modify the Appellate Division's order by reinstating defendant's conviction for that crime. Alternatively, my conclusion that defendant and codefendant committed depraved indifference murder necessarily entails a finding that they at least acted recklessly. I would, therefore, adopt the People's suggestion to modify the Appellate Division's corrective action by reinstating the count of the indictment charging depraved indifference murder and reducing the conviction to second-degree manslaughter (see CPL 470.40 [3]). I join in the remainder of the majority's modification of the Appellate Division's order.
Order modified by reinstating the conviction for conspiracy in the fourth degree and remitting to the Appellate Division, Second Department, for consideration of the facts and, as so modified, affirmed.
NOTES
[1] Codefendant pleaded guilty to one count of manslaughter in the first degree in full satisfaction of the charges against him.
[2] Penal Law § 125.25 (1) provides that a person is guilty of murder in the second degree when "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person."

Penal Law § 125.25 (2) provides that one is also guilty of murder in the second degree when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."
Penal Law § 15.05 (3) provides that "[a] person acts recklessly * * * when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur * * *."
[3] Penal Law § 20.00 provides that "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."
[4] Penal Law § 105.10 (1) states that a person "is guilty of conspiracy in the fourth degree when, with intent that conduct constituting * * * a class B or class C felony be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct."

Penal Law § 120.10 (1) states that one is guilty of assault in the first degree when "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."