Read, J.
(concurring in part and dissenting in part). I disagree with the majority’s conclusion that there is no record support for the jury’s decision that defendant’s and codefendant’s conduct was reckless and depraved rather than intentional. Accordingly, I respectfully dissent from that part of the Court’s opinion affirming the Appellate Division’s reversal of the depraved indifference murder conviction.
*261 The jury convicted defendant of depraved indifference murder under an accomplice liability theory (see Penal Law § 20.00). The People, therefore, had to show that defendant intentionally aided his codefendant, and that they shared the same state of mind when committing the crime (see People v Sanchez, 98 NY2d 373 [2002]; see also People v Brathwaite, 63 NY2d 839, 842 [1984]). Generally, evidence of a “single deliberate wound to the chest that perforated the victim’s heart” (majority op at 258), following months of plotting revenge, is consistent only with intentional murder, as the majority points out. But in this case the jury also heard testimony at trial consistent with depraved indifference murder.
Defendant testified, and the People introduced several post-arrest statements that he made to law enforcement officials and other witnesses. He consistently claimed that he and codefendant never intended to kill the victim. Rather, as the Appellate Division noted, “defendant and a friend [codefendant] lured the victim out of a bar, planning to beat him” (People v Hafeez, 295 AD2d 624, 624 [2d Dept 2002]). Additionally, defendant— the only witness to the murder — described a quick moving fistfight. The jury heard that, after defendant shoved the victim against a wall, codefendant was “all over” the victim for about 30 seconds, throwing punches. After that, the victim pushed his way back into the bar. Moreover, in addition to the knife wound to the chest, the victim suffered a small knife wound on the top of his head. This fact bolsters defendant’s account of a melee, not a planned murder.
While my colleagues may disbelieve defendant’s testimony, the jurors apparently credited at least some of it. After all, by acquitting of intentional murder they expressly found that defendant and codefendant did not have a “conscious objective * * * to cause” (People v Sanchez, 98 NY2d at 377, quoting Penal Law § 15.05 [1]) the victim’s death. The jury also convicted of a conspiracy premised on intending to cause serious physical injury, not death. Thus, viewing defendant’s testimony in the light most favorable to the People (i.e., the jurors believed that he and codefendant intended “only” to stab the victim, whose death resulted from the half-minute struggle that ensued after they ambushed him, not from an immediate, calculated killing thrust to the heart), “a rational jury could harbor a reasonable doubt that the homicide * * * was intentional” (People v Sanchez, 98 NY2d at 377). Certainly, the jurors heard no testimony that the stabbing occurred immediately, or that codefendant aimed for the victim’s chest.
*262 Further, a rational jury could have concluded that codefendant committed depraved indifference murder. Codefendant, armed with a nine-inch steak knife, carried out a plan designed to lure the unsuspecting victim outside and neutralize his size and weight advantage. Arguably, setting upon a momentarily vulnerable victim with a nine-inch knife intending to injure, but not to kill, was as “imminently dangerous and presented a[s] grave [a] risk of death” as “[t]he firing of a loaded gun in an enclosed space within 18 inches of another person” (id. at 385). Codefendant, therefore, acted with the “extreme recklessness” (id. at 380) necessary for depraved indifference murder.
Besides possessing the necessary mens rea, “based on an objective assessment of the risk [co]defendant recklessly created and disregarded, the likelihood of causing death from [co] defendant’s conduct was so obviously severe that it evinced a depraved indifference to human life” (id. at 384). In fact, “objective circumstances manifesting depraved indifference” (id. at 385) that we identified in Sanchez are similar to circumstances here. There, we noted that the “[defendant felt insulted by his victim” and “[i]nstead of amicably settling their dispute” (id. at 385, 386), fired a gun at his chest. Here, there was evidence that defendant and codefendant both “felt insulted” (id. at 385) by the victim’s earlier altercation with them, and they certainly did not settle their dispute “amicably” (id. at 386); instead, they plotted to entice their victim outside with a bogus story designed to ensure that he would emerge from the bar alone and unsuspecting.
Additionally, given the victim’s size advantage over codefendant, it was likely that he always intended to use the knife hidden in his sleeve. Surely, codefendant could not have expected the physically larger and stronger victim not to fight back. Codefendant ignored the risk that a struggle would occur while he was wielding the knife, which (the jurors could have reasonably concluded) might result in a misdirected or wild fatal thrust. Alternatively, the jurors could have rationally concluded that codefendant, bent on revenge, simply did not care whether he wounded his victim in a life-threatening area of his body; i.e., although codefendant may have intended “only” to wound, he paid no heed whether the wound might result in death.
To support the conclusion that the evidence was consistent with intentional murder only, the majority emphasizes that this “was a quintessential^ intentional attack directed solely at the victim” (majority op at 258). Also, the majority suggests *263 that the People met their burden for depraved indifference murder in Sanchez because the defendant there shot “into an area where children were playing, presenting a heightened risk of unintended injury” (majority op at 259). In Sanchez, however, we made clear that depraved indifference murder requires neither that the “conduct causing death * * * be ‘aimed at no one in particular’ ” nor that the conduct “ ‘endanger! ] indiscriminately the lives of many’ ” (id. at 383, quoting Darry v People, 10 NY 120, 146 [1854]). While prior versions of depraved indifference murder may have had those two requirements, “[b]oth are entirely obsolete under the current statute” (People v Sanchez, 98 NY2d at 383).
Further, we have never intimated that a conviction for depraved indifference murder can stand only if the defendant had not intended to injure the ultimate victim. To the contrary, we have upheld depraved indifference murder convictions where there may have been intent to injure the victim so long as the defendant did not have a “conscious objective * * * to cause [the death]” (id. at 377) of that victim (see e.g. People v Poplis, 30 NY2d 85, 87 [1972] [baby’s death “caused by repeated physical beatings by defendant” over several days]; see also People v Kibbe, 35 NY2d 407 [1974] [defendants abandoned intoxicated robbery victim on side of road on freezing night]).
Thus, it is of no moment that the attack here may have been intentional. What the jurors had to determine was whether co-defendant committed the “offense” of depraved indifference murder during the attack. An “offense” is premised on “conduct” (see Penal Law § 10.00 [1]), which in turn consists of an “act” (a “bodily movement” [Penal Law § 15.00 (1)]) and associated mens rea (Penal Law § 15.00 [4]).
The codefendant may have intentionally thrust his knife at the victim’s chest. Given the struggle that was occurring with the larger and stronger victim, however, it was not irrational for the jurors to conclude that codefendant lacked the conscious objective of causing death (see People v Sanchez, 98 NY2d at 377) when he acted. Indeed, the jurors could have rationally concluded that: codefendant was swinging wildly; the victim moved and codefendant hit an area at which he had not taken aim; the victim may have deflected codefendant’s arm; or codefendant simply did not care where the knife struck the victim as long as he managed to stab him. Accordingly, when codefendant made the “bodily movement” (Penal Law § 15.00 [1]) that resulted in the stab wound, the evidence *264 viewed in the light most favorable to the People allowed the jurors rationally to conclude that codefendant’s state of mind with respect to murder was not intentional, but rather was “extreme[ly] reckless[]” (People v Sanchez, 98 NY2d at 380).
Because I believe that there is sufficient record support for the jury’s conclusion that codefendant committed depraved indifference murder, I would modify the Appellate Division’s order by reinstating defendant’s conviction for that crime. Alternatively, my conclusion that defendant and codefendant committed depraved indifference murder necessarily entails a finding that they at least acted recklessly. I would, therefore, adopt the People’s suggestion to modify the Appellate Division’s corrective action by reinstating the count of the indictment charging depraved indifference murder and reducing the conviction to second-degree manslaughter (see CPL 470.40 [3]). I join in the remainder of the majority’s modification of the Appellate Division’s order.
Chief Judge Kaye and Judges Smith, Wesley and Graffeo concur with Judge Ciparick; Judge Rosenblatt concurs in result in a separate opinion; Judge Read dissents in part and votes to additionally reinstate defendant’s conviction for murder in the second degree in another opinion.
Order modified by reinstating the conviction for conspiracy in the fourth degree and remitting to the Appellate Division, Second Department, for consideration of the facts and, as so modified, affirmed.