164

[860 NYS2d 86]

The People of the State of New York, Respondent, v Jovannie Florestal, Appellant.

First Department, June 24, 2008

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Abigail Everett* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Christopher P. Marinelli* and *Susan Axelrod* of counsel), for respondent.

## OPINION OF THE COURT

LIPPMAN, P.J.

The primary issue raised by this appeal is whether defendant was properly convicted of depraved indifference murder where the jury was instructed to consider the element of depraved indifference based on the objective circumstances surrounding defendant's conduct instead of based on her mental state. Since the jury charge did not provide an accurate definition of depraved indifference, we reverse and remand for a new trial.

Defendant Jovannie Florestal was convicted after a jury trial of one count of second-degree murder (Penal Law § 125.25 [4])* in connection with the death of her three-month-old child, Colesvintong Florestal, Jr. Codefendant father, Colesvintong Florestal, pleaded guilty to one count of second-degree murder prior to trial and was sentenced to 20 years to life in prison. His conviction was affirmed (*People v Florestal*, 47 AD3d 457 [2008], *lv denied* 10 NY3d 810 [2008]). The People proceeded against defendant both on the theory that she and codefendant acted in concert and on the theory that she failed to provide her infant son with adequate food and medical care.

The child was born February 21, 2004, weighing nine pounds, two ounces. He died three months later, on May 20, 2004, at approximately the same weight. The medical examiner testified that the cause of death was a combination of "malnutrition,

---

\* Penal Law § 125.25 (4) provides that

"[a] person is guilty of murder in the second degree when . . . [u]nder circumstances evincing a depraved indifference to human life, and being eighteen years old or more the defendant recklessly engages in conduct which creates a grave risk of serious physical injury or death to another person less than eleven years old and thereby causes the death of such person."

dehydration and multiple injuries of different ages, Battered Child Syndrome." The infant sustained a number of serious physical injuries, some of which were external and plainly visible. The autopsy revealed many broken bones at various stages of healing, including a fractured skull caused by blunt impact. The medical examiner also testified that there was evidence of bleeding on the brain that indicated that the child had been shaken violently on more than one occasion. The medical examiner noted that the infant was emaciated and had suffered from inadequate nutrition for an extended period of time.

The theory of the defense was that defendant was not indifferent to her child's suffering but, as a result of her experiences, was incapable of rendering assistance. Defendant sought to introduce psychiatric testimony from an expert witness, Dr. Joseph Scroppo, a forensic psychologist, about "battering and its effects in order to rebut the statutory element of 'depraved indifference to human life.' " Supreme Court precluded Dr. Scroppo from offering expert opinion as to defendant's mental state pertaining to depraved indifference, which it viewed as an issue for the jury to decide. However, the court did find such evidence admissible as to defendant's mental state on the mens rea element of recklessness.

At trial, Dr. Scroppo testified, based largely on information imparted to him by defendant, that defendant had a traumatic upbringing, including having been sexually abused by her brothers when she was a child. Dr. Scroppo also testified that defendant told him that codefendant had been physically abusive to her. He opined that, as a result, defendant would likely minimize what was happening in the home as a coping strategy, and fail to perceive the need for outside assistance. Dr. Scroppo also indicated that he was not sure to what extent defendant actually appreciated the magnitude of the harm to her child.

When delivering the jury charge on depraved indifference, the court instructed the jury that it must determine whether an objective assessment of the circumstances showed that defendant's conduct demonstrated a complete disregard for the value of human life. In response to a request from the jury, the court repeated the instruction that the jury must consider defendant's conduct based on the objective circumstances. The jury ultimately returned a verdict finding defendant guilty of depraved indifference murder.

As a preliminary matter, we find that defendant adequately preserved the argument that depraved indifference is "a culp-

able mental state" (*People v Feingold*, 7 NY3d 288, 294 [2006]). Defendant moved for a trial order of dismissal, asserting that there was insufficient evidence to show that she was aware of and recklessly disregarded a risk of imminent death. Further, as to the scope of proposed expert psychiatric testimony, defendant argued that the Court of Appeals had rejected the objective circumstances standard, holding in *People v Suarez* (6 NY3d 202 [2005]) that a state of mind of depraved indifference is an element of the crime of depraved indifference murder. Supreme Court expressly rejected defendant's position.

Although defendant did not make a specific request to charge or object to the jury charge as given, the issue was adequately preserved, since the trial court "specifically confronted and resolved [it]" (*Feingold*, 7 NY3d at 290; *see* CPL 470.05 [2]). "The law does not require litigants to make repeated pointless protests after the court has made its position clear" (*People v Mezon*, 80 NY2d 155, 161 [1992]).

■■ Defendant asserts that the trial court erroneously instructed the jury to consider the objective circumstances surrounding defendant's conduct instead of whether defendant had the required mental state of depraved indifference. Defendant further contends that her expert should have been permitted to render an opinion as to whether she had, or was capable of forming, the mental state of depraved indifference. Defendant's arguments have merit under the current formulation of the law. Inasmuch, however, as the law was, at least arguably, unclear at the time of the trial, an issue is raised as to the applicability of the subsequently articulated law.

In this respect, it may be useful to briefly describe the recent evolution of the law on the issue of depraved indifference. For many years, the rule, as stated in *People v Register* (60 NY2d 270, 277 [1983], *cert denied* 466 US 953 [1984]) and followed in *People v Sanchez* (98 NY2d 373, 379-380 [2002]), was that depraved indifference was not a mens rea. Instead, it was intended "to objectively define the circumstances which must exist to elevate a homicide from manslaughter to murder" (*Register* at 278). Shortly after *Sanchez* was decided, the Court reversed a series of convictions of depraved indifference murder where each defendant's conduct in killing a single victim was consistent only with intentional murder (*see People v Payne*, 3 NY3d 266 [2004]; *People v Gonzalez*, 1 NY3d 464 [2004]; *People v Hafeez*, 100 NY2d 253 [2003]). This line of cases began to "point[ ] the law in a different direction" (*Feingold*, 7 NY3d at 292).

■ Subsequently, *People v Suarez* (6 NY3d at 214) explained that the statutory element of "depraved indifference to human life" (Penal Law § 125.25 [2]) is a component of the crime, consisting of both depravity and indifference. The Court acknowledged that its holding constituted a departure from *Register* since depraved indifference was no longer being defined exclusively by reference to the magnitude of the risk presented by defendant's conduct (*see Suarez* at 215). However, the Court did not take the step of expressly overruling *Register* and stating that depraved indifference was in fact "a culpable mental state" until *People v Feingold* (7 NY3d at 294). To place defendant's case in the context of this progression of the law, her trial took place in May 2006—after the Court had decided *Suarez*, but prior to its decision in *Feingold*. Defendant was sentenced approximately one month after *Feingold* was decided.

"Under traditional common-law principles, cases on direct appeal are generally decided in accordance with the law as it exists at the time the appellate decision is made" (*People v Vasquez*, 88 NY2d 561, 573 [1996]). There is no reason to depart from this principle here. We have already implicitly determined that the current formulation of depraved indifference murder should be applied when reviewing cases on direct appeal (*see People v Dickerson*, 42 AD3d 228, 234-235 [2007], *lv denied* 9 NY3d 960 [2007]). Other departments of the Appellate Division have likewise concluded that current law is applicable (*see e.g. People v George*, 43 AD3d 560, 561-562 [3d Dept 2007], *lv granted* 9 NY3d 961, 966 [2007]; *People v Collins*, 45 AD3d 1472, 1473 [4th Dept 2007]).

By contrast, the Court of Appeals was squarely presented with the issue of retroactivity in *Policano v Herbert* (7 NY3d 588 [2006]) and held that retroactive application was not appropriate in the context of a habeas corpus proceeding, where the underlying conviction had long been final. That procedural posture presents different considerations than the present case, where defendant is challenging her conviction on direct appeal. Defendant's case does not present the problem of a potentially overwhelming amount of litigation brought by those seeking postconviction collateral relief. It is interesting to note that Policano's conviction became final in June of 2001—a year before *Sanchez* was decided. Here, although *Register* and *Sanchez* were not expressly overruled until *Feingold* (*see Policano*, 7 NY3d at 603), the law had been sufficiently modified at the time of defendant's trial for defendant to have actually

raised the issue of whether depraved indifference is a culpable mental state and for the trial court to have ruled on that issue. Thus, it is certainly appropriate to apply current law on depraved indifference to defendant's case.

Applying the existing law, it is clear that the trial court improperly instructed the jury that depraved indifference must be determined by an objective view of the circumstances, rather than according to defendant's state of mind. We cannot conclude "that the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at [a] decision" (*People v Umali*, 10 NY3d 417, 427 [2008] [internal quotation marks and citation omitted]). As the evolution of the case law has made apparent, an appropriate charge would instruct the jury to evaluate the element of depraved indifference as a mental state in order to determine whether defendant's conduct reflected a complete disregard for the value of human life and whether defendant acted because he or she was indifferent to whether or not grievous harm would result (*see Suarez*, 6 NY3d at 214; CJI2d[NY] Penal Law § 125.25 [4]). Since the jury convicted defendant based on an erroneous definition of the charged crime, defendant is entitled to a new trial.

■ The same error infected the trial court's refusal to allow defendant's expert witness to render an opinion whether defendant's state of mind was that of "depraved indifference" to the plight of her child. The record demonstrates that the trial court failed to exercise its discretion as to the admissibility of that aspect of the expert testimony because it found that depraved indifference was "an objective, factual jury question," rather than a question of defendant's state of mind. The court could have found that the effects of defendant's history of abuse on her ability either to comprehend the danger to her child or to provide the child with appropriate medical assistance were outside the understanding of the average juror. Since depraved indifference is "a culpable mental state," the proposed expert testimony is akin to testimony concerning a defendant's ability to form the requisite intent and would be admissible (*see People v Cronin*, 60 NY2d 430, 433-434 [1983]).

■ Finally, Supreme Court properly denied defendant's motion to preclude her statement to caseworkers from the Administration for Children's Services (ACS) based on the People's failure to provide CPL 710.30 notice. ACS's independent investigation pertaining to both the deceased infant and defendant's older child was not subject to the type of pervasive

governmental involvement that would transform it into state action (*see People v Ray*, 65 NY2d 282, 286 [1985]).

The verdict was based on legally sufficient evidence and was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]). In light of our remand for a new trial, we do not address defendant's remaining contentions. We leave them to the sound discretion of the court, should they arise on retrial (*see People v Evans*, 94 NY2d 499, 504-505 [2000]).

Accordingly, the judgment of the Supreme Court, New York County (William A. Wetzel, J.), rendered August 7, 2006, convicting defendant, after a jury trial, of murder in the second degree, and sentencing her to a term of 25 years to life, should be reversed, on the law, and the matter remanded for a new trial.

TOM, WILLIAMS and ACOSTA, JJ., concur.

Judgment, Supreme Court, New York County, rendered August 7, 2006, reversed, on the law, and the matter remanded for a new trial.