**Scott FLOWERS, Petitioner–Appellant,**

v.

**Brian FISHER, Superintendent, Sing Sing Correctional Facility, Respondent–Appellee.[1]**

No. 06–5542–pr.

United States Court of Appeals, Second Circuit.

Oct. 21, 2008.

---

1. The official caption should be amended to

identify the appellant as "Petitioner–Appel-

Randall D. Unger, Bayside, NY, for Petitioner–Appellant.

Rona Kugler (John M. Castellano, of counsel), Assistant District Attorneys for Richard A. Brown, District Attorney, Queens County, Kew Gardens, NY, for Respondent–Appellee.

lant" and the appellee as "Respondent–Appel-

Present: PIERRE N. LEVAL, ROBERT A. KATZMANN, and DEBRA ANN LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

The petitioner-appellant Scott Flowers appeals from a judgment of the district court dated October 25, 2006, denying his petition for a writ of habeas corpus. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

Flowers was convicted after a jury trial of murder in the second degree in violation of New York Penal Law § 125.25[2] and criminal possession of a weapon in the second degree in violation of New York Penal Law § 265.03, arising out of Flowers's fatally shooting Andre Holly in the wee hours of the morning of July 4, 1997. More specifically, Flowers was convicted of depraved-indifference murder, but was acquitted of intentional murder. He was sentenced to concurrent prison terms of eighteen years to life on the murder count and seven and a half years to fifteen years on the weapon count. The appellate division affirmed his conviction on direct appeal, *People v. Flowers*, 289 A.D.2d 504, 734 N.Y.S.2d 638 (App.Div.2001), and the New York Court of Appeals denied leave to appeal to that court, *People v. Flowers*, 97 N.Y.2d 754, 742 N.Y.S.2d 614, 769 N.E.2d 360 (2002). Flowers subsequently filed a petition for a writ of habeas corpus in the Eastern District of New York on numerous grounds. The district court denied relief, but granted a certificate of appealability on the sole issue of whether there was sufficient evidence to support his conviction for depraved-indifference murder. Flowers contends that "there was simply no reasonable view of the evi-

lee."

dence to indicate that [his] shooting of Holly was anything but intentional."

We review a district court's denial of a petition for a writ of habeas corpus de novo. *Loliscio v. Goord,* 263 F.3d 178, 184 (2d Cir.2001). In our review, however, we must follow the standard of review from the Antiterrorism and Effective Death Penalty Act of 1996, which states that a writ may not be granted "unless the adjudication of the claim(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Murden v. Artuz,* 497 F.3d 178, 197 (2d Cir.2007). "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reviewing the sufficiency of the evidence, we must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor. *Id.* at 319, 326, 99 S.Ct. 2781. As such, "a defendant making such a challenge bears a very heavy burden." *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir. 1993) (internal quotation marks omitted).

Flowers argues that the evidence in this case is insufficient to support a conviction for depraved-indifference murder, because the evidence could show only that he intentionally killed Holly. We look to New York law as it existed at the time Flowers's conviction became final, as the New York Court of Appeals has found that al-though the law on depraved indifference has changed significantly in recent years, those changes do not apply retroactively. *See Policano v. Herbert,* 7 N.Y.3d 588, 825 N.Y.S.2d 678, 859 N.E.2d 484, 495 (2006) (noting that "[t]he purpose of our new interpretation of [depraved indifference] is to dispel the confusion between intentional and depraved indifference murder, and thus cut off the continuing improper expansion of depraved indifference murder").

The elements of depraved-indifference murder are: (1) that the defendant recklessly engaged in conduct (2) which created a grave risk of death to another person (3) thereby causing the death of another person (4) under circumstances evincing a depraved indifference to human life. *Id.* at 688, 859 N.E.2d at 494. Under the New York Penal Law, a person acts recklessly "when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur." N.Y. Penal Law § 15.05[3]; *see also Policano,* 825 N.Y.S.2d 678, 859 N.E.2d at 491 (under law applicable at the time of Flowers's conviction, "recklessness, pure and simple, is the mens rea for depraved indifference murder"). At the time of Flowers's conviction, the law, as explained by the New York Court of Appeals in *Policano,* was "where both intentional and depraved indifference murder were charged in one-on-one shootings or knifings, these counts were submitted to the jury for it to sort out the defendant's state of mind *unless there was absolutely no evidence whatsoever* that the defendant might have acted unintentionally." *Id.* at 687, 859 N.E.2d at 493 (emphasis added). The court continued: "That a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference. To the contrary ... the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial

evidence of intent—for example, a point-blank shooting of the victim in the head—likewise demonstrated depraved indifference." *Id.*

Applied to this case, the result is clear. Taking the evidence in the light most favorable to the verdict, as we are required to do, there was not "absolutely no evidence whatsoever that the defendant might have acted unintentionally." For instance, there was evidence that Flowers was drinking and using drugs during the night of the murder, supporting the jury's finding of lack of intent, particularly given the trial judge's instruction to the jury that it could consider evidence of intoxication in determining whether Flowers was capable of forming criminal intent. Moreover, the jury could have credited Flowers's own testimony that the shooting occurred as a result of a struggle, which was corroborated by a broken gold chain found on the ground next to Holly's body. The jury, therefore, could have found that Flowers recklessly brandished the gun intending to intimidate Holly, but that Flowers fatally shot Holly in the ensuing struggle. And under the law at the time of his conviction, the very fact that Flowers acted to create such an unjustifiable risk to human life "supports rather than detracts from characterizing [his conduct] as evincing depraved indifference to human life." *People v. Sanchez*, 98 N.Y.2d 373, 748 N.Y.S.2d 312, 777 N.E.2d 204, 211 (2002); *see also Policano*, 825 N.Y.S.2d at 686–87, 859 N.E.2d at 492–93 (the standard for depraved indifference "was fulfilled if a defendant's actions created an almost certain risk of death by, for example, shooting the victim in the head multiple times at close range"). This was "a classic matter for the jury," *id.* at 686, 859 N.E.2d at 492, whose judgment we may not disturb on collateral attack. *See also Jackson*, 443 U.S. at 326, 99 S.Ct. 2781.

For the foregoing reasons, the sentence of the district court is hereby **AFFIRMED**.