■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES LONG, and NATASHA LONG, Appellants. [741 NYS2d 592] —Carpinello, J. Appeals from two judgments of the County Court of Greene County (Pulver, Jr., J.), rendered October 10, 2000, upon verdicts convicting defendants of the crimes of assault in the third degree and endangering the welfare of a child (two counts).

Defendants James Long and Natasha Long stand convicted, following a jury trial, of assault in the third degree and two counts of endangering the welfare of a child as a result of conduct involving their adopted daughter, Karen Long.[1] Specifically, the assault charge and one of the endangering charges stem from an incident in July 1997 wherein Karen, then 10 years old, was beaten with a metal garden stake in the garage of defendants' home. The remaining endangerment charge stems from a multitude of alleged parental transgressions between January 1998 and June 1999 concerning the raising and disciplining of Karen, including alleged educational neglect, threatening her with the "devil," not permitting her access to other children, depriving her of food and smearing cat feces on her face. County Court submitted the subject charges to the jury with an instruction on accomplice liability under Penal Law § 20.00. After conviction, both defendants were sentenced to an aggregate term of two years in jail and both now appeal.

Defendants claim that the evidence against them on all three charges was legally insufficient. We turn first to the two charges relating to the July 1997 beating incident. The record reveals that one afternoon in July 1997, defendants, upset with Karen because she had consumed a piece of cake without permission, approached her while she was swimming in the family pool, told her to get out and proceeded to "smack" her around. According to Karen, James directed her into the ga-

---

1. Karen was born in Chile and is Natasha's great niece.

rage and instructed her to stand against a metal pole. He then proceeded to strike her repeatedly with a metal garden stake on the back of her legs. According to Karen, Natasha watched through the window of the garage door. Karen also testified that she endured "very sharp pain" while being struck and for a few days thereafter. She further testified that she experienced lingering pain for at least two months and that her wounds healed with scars on her legs as a result of this incident.

Karen's testimony was substantially confirmed by three witnesses, namely, one of Natasha's adult sons (Eugene De Villamil), Natasha's niece (Olga Jara) and defendants' adoptive son (George Long). In particular, Eugene and Olga were present in the yard when Karen was removed from the pool and both witnessed defendants shoving and slapping her. Olga specifically testified that *both* defendants then "start[ed] to push Karen toward the garage" and that she thereafter heard Karen screaming. Both Eugene and Olga testified that they observed welts on Karen's legs later that same day.

George, who witnessed the incident from inside the house, testified that, while James and Karen were inside the garage, Natasha "was outside holding the side door." George further observed Karen crying, heard her complaints of pain and observed the injuries to her legs. According to George, Karen limped around the next day because of the injuries and had scars on her legs for at least six months. Although not present for the incident itself, Natasha's other adult son (Phillip De Villamil) testified that he saw Karen later that same day and observed the lacerations and welts on her legs and James' then sister-in-law (Joan Jensen) testified that she observed scars on Karen's legs one year after the incident.

Viewing this evidence in a light most favorable to the People (*see, People v Alexander*, 75 NY2d 979, 980; *People v Bleakley*, 69 NY2d 490, 494), we are satisfied that there is a "valid line of reasoning and permissible inferences" (*People v Bleakley*, *supra* at 495) which could lead the jury to rationally conclude that James intended to physically injure Karen that day, as opposed to merely discipline her, and that the element of physical injury was proven (*see*, Penal Law § 120.00 [1]); that is, Karen suffered "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]; *see, People v Morales*, 245 AD2d 467, 467-468, *lv denied* 92 NY2d 902; *People v Brown*, 243 AD2d 749, 749-750). Contrary to defendants' contentions, the evidence before the jury on the element of physical injury amounted to much more than Karen's "subjective" testimony of pain. Nor is the verdict rendered legally insufficient vis-à-vis

this particular statutory element because the People failed to demonstrate Karen's injury to the jury through photographs or an actual in-court demonstration.

Although a more difficult question, we are also satisfied that there was legally sufficient evidence establishing Natasha's guilt of assault in the third degree. To this end, we first note that County Court did not err in giving the jury instructions on accessorial liability with respect to each of the counts on which defendants were convicted (*see, e.g., People v Grim*, 166 AD2d 264, 265, *lv denied* 76 NY2d 986). Indeed, where one "intentionally aids another in the commission of the proscribed conduct, he or she is criminally liable for such conduct" (*People v Shoemaker*, 227 AD2d 720, 721, *lv denied* 88 NY2d 1024, citing Penal Law § 20.00). Moreover, "the People are not required to specify in an indictment whether a defendant is being charged as a principal or as an accomplice, a distinction which has been recognized as 'academic' for charging purposes" (*People v Watrous*, 270 AD2d 651, 654, quoting *People v Guidice*, 83 NY2d 630, 637).

Here, given the evidence that Natasha pushed Karen toward the garage and then held the door closed while James beat her inside, we conclude, again viewing the evidence in a light most favorable to the People (*see, People v Alexander, supra* at 980; *People v Bleakley, supra* at 494), that the jury could rationally find that Natasha, while acting with the requisite mental culpability, intentionally aided James in assaulting Karen and hence has accessorial liability for his conduct (*see,* Penal Law § 20.00; *People v Davis*, 278 AD2d 886, *lv denied* 96 NY2d 757; *People v Crawford*, 199 AD2d 406; *People v Hicks*, 48 AD2d 986, 987).[2] Likewise, viewing the evidence in a light most favorable to the People (*see, People v Alexander, supra; People v Bleakley, supra*), the jury also could have rationally concluded that both defendants endangered Karen's welfare as a result of this incident by "knowingly act[ing] in a manner likely to be injurious" to her physical welfare (Penal Law § 260.10 [1]; *see generally, People v Phelps*, 268 AD2d 692, *lv denied* 94 NY2d 924).

As to the other endangering the welfare of a child charge, Karen testified that Natasha smeared cat feces on her face because she was found in possession of one of her brother's belongings. This incident was witnessed by a family friend, Nicoletta Giovanni. Indeed, according to Nicoletta, James

---

2. Upon the exercise of our factual review power, and contrary to defendants' contentions, we are equally satisfied that the assault verdicts were not against the weight of the evidence (*see,* CPL 470.15 [5]).

directed Karen, who was struggling with Natasha, to put her hands down while Natasha put the feces on her. Furthermore, according to Nicoletta, Karen was made to sit with the excrement on her face for two hours. Thus, even assuming, without deciding, that all other allegations of the second endangering the welfare of a child count were legally insufficient to support the charge, this incident, by itself, more than established the crime (*see,* Penal Law § 260.10 [1]). Said differently, viewing the evidence concerning this particular incident—which can only be described as highly morbific and unusually cruel—in a light most favorable to the People (*see, People v Alexander, supra; People v Bleakley, supra*), the jury could rationally conclude that *both* defendants endangered Karen's welfare in that they "knowingly act[ed] in a manner likely to be injurious to [her] physical [or] mental * * * welfare" (Penal Law § 260.10 [1]).

Upon our review of the record, we are also unpersuaded that either defendant was unduly or improperly limited in the cross-examination of any witness. In addition, while certain statements and conduct of County Court were questionable, none was so egregious as to deprive either defendant of a fair trial. Finally, to the extent preserved, defendants' remaining contentions, including the claim that their sentences were harsh and excessive, have been reviewed and found to be without merit.

Cardona, P.J., Mercure, Mugglin and Rose, JJ., concur. Ordered that the judgments are affirmed, and matters remitted to the County Court of Greene County for further proceedings pursuant to CPL 460.50 (5).