OPINION OF THE COURT
Richard E. Sise, J.
In connection with a March 11, 2009 incident in which he assaulted his 12-year-old son, defendant was indicted for four crimes: assault in the first degree (Penal Law § 120.10 [3] [depraved indifference assault, class B felony]); assault in the second degree (Penal Law § 120.05 [1] [intentional assault, class D felony]); reckless endangerment in the first degree (Penal Law § 120.25 [depraved indifference reckless endangerment, class D felony]); and endangering the welfare of a child (Penal Law § 260.10 [1] [class A misdemeanor]). Both assault in the first degree and reckless endangerment in the first degree require proof that the defendant acted recklessly[1] and that he acted with “depraved indifference,” that is, that he engaged in certain conduct (respectively, “causing] serious physical injury” and “creating] a grave risk of death to another person”) “under circumstances evincing a depraved indifference to human life.”
On February 1, 2010, a jury trial was commenced before the Honorable Richard C. Giardino. At the close of testimony, before the matter was submitted to the jury, the People requested and received dismissal of the intentional assault charge (assault in the second degree). The jury was then charged on the three remaining crimes, and on February 11, it rendered a partial verdict, finding defendant guilty of the misdemeanor charge (endangering the welfare of a child) but reaching no verdict with respect to either of the felony charges.
*212 Defendant’s second trial, limited to assault in the first degree and reckless endangerment in the first degree, was commenced on May 28, 2010 before this court. At the conclusion of the People’s case, defendant moved for a trial order of dismissal (CPL 290.10 [1]) and the court reserved. That motion was renewed at the conclusion of defendant’s case, and the court again reserved. The jury was then charged on the two felonies and, in addition, on two lesser included offenses: assault in the third degree (Penal Law § 120.00 [2] [class A misdemeanor]) and reckless endangerment in the second degree (Penal Law § 120.20 [class A misdemeanor]). As noted above, both of the felonies require proof that the defendant acted with “depraved indifference,” while neither of the lesser included misdemeanors contain such a requirement.[2] The jury returned a verdict finding defendant guilty of assault in the first degree and reckless endangerment in the first degree. Implicit in each of those verdicts was a determination that defendant had acted with depraved indifference. This decision addresses both the motion for a trial order of dismissal (CPL 290.10 [1]) on which the court previously reserved and defendant’s subsequent motion to set aside the verdict (CPL 330.30).
Applicable Law
CPL 290.10 (1) provides that a court may dismiss “any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.”[3] When a court reserves on such a motion and considers it only after the jury has rendered its verdict, the determination is to be based upon “such evidence as it would have been authorized to consider upon the motion had the court not reserved decision.” (CPL 290.10 [1].) Consequently, where, as here, the motion was renewed at the close of defendant’s case, the court’s decision is to be based on all of the evidence that was presented at trial (People v Payne, 3 NY3d 266, 273 [2004]; compare People v Hines, 97 NY2d 56, 61 [2001], rearg denied 97 NY2d 678 [2001]).
*213 In considering a motion for a trial order of dismissal, the court must accept the trial evidence as true without considering its quality or weight, and it must view that evidence in the light most favorable to the People (People v Hughes, 287 AD2d 872, 877 [3d Dept 2001], lv denied 97 NY2d 656 [2001]; People v Singh, 191 AD2d 731 [2d Dept 1993], lv denied 81 NY2d 1020 [1993]; People v Thompson, 222 AD2d 156, 159 [2d Dept 1996] [“In determining such a motion, the Judge does not rule based on an assessment of the quality or weight of the evidence, or upon the court’s impression of the credibility of the witnesses”]; see also People v Simon, 157 AD2d 508, 514 [1st Dept 1990]). Nor must the court consider or base its ruling on an assessment of whether a charge was proved beyond a reasonable doubt (Holtzman v Bonomo, 93 AD2d 574 [2d Dept 1983]; Muldoon, Handling a Criminal Case in New York § 18:341 [“Trial order of dismissal: objection to legal sufficiency — Standard for decision”] [2009]). As the language of the statute indicates, a CPL 290.10 motion must be denied if the evidence is sufficient to support a lesser included crime, even if it is not sufficient to support conviction of the charged crime (People v Vaughan, 48 AD3d 1069, 1070 [4th Dept 2008]; People v Phillips, 256 AD2d 733, 735 [3d Dept 1998]).
CPL 330.30 (1) authorizes a trial court to set aside or modify a verdict, or any part thereof, on “[a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.” One type of ruling that is deemed to be “upon the law” is a determination that the evidence “was not legally sufficient to establish the defendant’s guilt of an offense of which he was convicted” (CPL 470.15 [4] [b]).* *[4] 5As with the motion for a trial order of dismissal, the court must view the evidence in the light most favorable to the prosecution and must determine whether there is “competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’ (CPL 70.10 [1]; People v Contes, 60 NY2d 620, 621 [1983]; People v Hampton, 64 AD3d 872, 874 [3d Dept 2009]). If the court determines that the evidence was not legally *214 sufficient to support the defendant’s guilt of the crime for which he was convicted but is sufficient with respect to a lesser included offense, CPL 470.15 (2) (a) provides that the appellate court (and thus on a CPL 330.30 motion, the trial court) “may modify the judgment by changing it to one of conviction for the lesser offense.”[5]
In support of both motions, defendant contends that the evidence presented at trial was legally insufficient to establish that he acted with depraved indifference, as there was no evidence he possessed the mens rea of depraved indifference to human life because the assault, which involved a single victim, did not constitute either abandonment of a “helpless and vulnerable victim in circumstances where the victim is highly likely to die” or “torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim” (People v Suarez, 6 NY3d 202, 212 [2005]).[6] The People contend that the victim was a vulnerable victim and that the assault against him was brutal and prolonged, thus satisfying the mens rea requirement of depraved indifference.
It is now well settled that in order to be found guilty of a depraved indifference crime, a defendant must be reckless and, in addition, must act with a state of mind “best understood as an utter disregard for the value of human life — a willingness to act not because one intends harm, but because one simply doesn’t care whether grievous harm results or not” (People v Feingold, 7 NY3d 288, 296 [2006]). For many years, however, the Court of Appeals held that the only mens rea requirement for these crimes was recklessness and that the additional statutory requirement that the crime be committed “[u]nder circum *215 stances evincing a depraved indifference to human life” was neither mens rea nor actus reus but, rather, a “definition of the factual setting in which the risk creating conduct must occur” (People v Register, 60 NY2d 270, 276 [1983]). Determining whether such a factual setting was present required the court not to consider the defendant’s subjective state of mind but, rather, to make an “objective assessment of the degree of risk presented by defendant’s reckless conduct” (id. at 277; see also People v Sanchez, 98 NY2d 373, 384 [2002] [“issue before us is whether, on this record, based on an objective assessment of the risk defendant recklessly created and disregarded, the likelihood of causing death from defendant’s conduct was so obviously severe that it evinced a depraved indifference to human life”]).
In Register, the defendant brought a loaded pistol to a bar, argued with another patron, pulled out his gun, shot at a bystander while aiming at the person with whom he had been arguing, shot again at the person with whom he was arguing, and then, for no apparent reason, shot an acquaintance who was walking by. In Sanchez, an argument between two people who had been friends erupted at a family birthday party and, as the defendant started to leave, he suddenly turned and fired a gun from behind a partially closed door, not directly aiming at, but nevertheless killing the person with whom he had been arguing. In both cases, the majority of the Court upheld convictions of depraved indifference crimes.
In both cases there were strong dissenting opinions that asserted the statute’s invocation of depraved indifference was intended to impose a mens rea requirement, one requiring proof of “a state of mind more vicious than recklessness” but lacking the attributes of intention (People v Register, 60 NY2d at 283 [Jasen, J., dissenting]). Otherwise, the dissenting Judges argued, the Register/Sanchez standard created an impermissible overlap of and confusion between intentional crimes and depraved indifference crimes (People v Sanchez, 98 NY2d at 388-394 [G.B. Smith, J., dissenting], 394-416 [Rosenblatt, J., dissenting]). Certain actions, such as shooting someone at close range, would always carry a very high risk of harm if the objective circumstances were considered but, at the same time, would provide the basis for inferring an intentional crime.[7] Consequently, it was argued, the standard established by the majority in Regis *216 ter and Sanchez “leaves no conceivable circumstances under which a charge of intentional murder will not be amenable to a conviction for depraved indifference murder,” thus making the two crimes “merged, fully and inseparably” (id. at 394 [Rosenblatt, J., dissenting]).
In a series of decisions issued between 2003 and 2006, the Court of Appeals declined to uphold depraved indifference convictions in situations where the objective circumstances revealed an extremely high degree of risk of injury or death, but where the crimes could only be considered intentional (see People v Hafeez, 100 NY2d 253 [2003] [defendant conspired with a friend to get revenge on someone who had hurt the friend, pushing the victim against the wall to allow his friend to attack with a knife and then helping the friend dispose of the murder weapon]; People v Gonzalez, 1 NY3d 464 [2004] [defendant entered a barber shop, shot his victim a total of 10 times at point-blank range, and harmed no one else]; People v Payne, 3 NY3d 266 [2004] [defendant became angry at his neighbor, took a gun, went to the neighbor’s home, and shot him at pointblank range]; People v Suarez, 6 NY3d 202 [2005] [defendant stabbed his girlfriend three times in vital organs and then left her to die]). In each of these cases, the Court declined to apply the Register ¡Sanchez test, concluding that “[w]hen a defendant’s conscious objective is to cause death, the depravity of the circumstances under which the intentional homicide is committed is simply irrelevant” and that the “disregard for human life inherent in every intentional homicide” does not convert such a killing into depraved indifference murder (People v Suarez, 6 NY3d at 210, quoting People v Gonzalez, 1 NY3d at 468).
Although the rulings in Hafeez, Gonzalez, Payne and Suarez departed from the Register/Sanchez standard, the Court of Appeals did not expressly overmle that standard until it issued the decision in People v Feingold (7 NY3d 288 [2006]). In that case, the defendant did not intentionally seek to harm anyone other than himself but attempted to commit suicide in a way that created a high risk of explosion and injury to all others in his apartment building. The trial judge, who was the factfinder in that case, held that although the defendant had acted recklessly, his state of mind “was not one of extreme wickedness, or abject moral deficiency, or a mischievous disregard for the near certain consequences of his irresponsible act” (7 NY3d at 295). Consequently, the Court of Appeals held that, since the defendant had not acted with the mens rea of depraved indifference, *217 he could not be guilty of reckless endangerment in the first degree, thus directly rejecting the rule of law as enunciated in Register and Sanchez. This change in law was stated succinctly in People v Jean-Baptiste (11 NY3d 539, 542 [2008]): “Thus, under Feingold, it is not the circumstances under which the homicide occurred that determines whether defendant is guilty of depraved indifference murder, but rather defendant’s mental state at the time the crime occurred.”[8]
There has also been an evolution in the law regarding whether someone involved in one-on-one violence can be considered to have acted with depraved indifference. For a long time, such designation could be given only to conduct that was “aimed at no one in particular, but endangering indiscriminately the lives of many” (Darry v People, 10 NY 120, 146 [1854]). Examples given in that seminal case were (1) situations in which there was a general intention to cause harm to a person or persons but the intention was not directed at any particular individual (e.g., shooting a gun into a crowd in order to cause injury) and (2) situations in which the lives of many were put into jeopardy by acts that were depraved and utterly reckless even if there was no conscious intent to seriously harm people (e.g., shooting into a crowd merely to cause alarm or derailing a train for the sole purpose of destroying railroad property). This continued to be the rule for many decades and through a number of statutory modifications (see e.g. People v Jernatowski, 238 NY 188, 193 [1924] [depraved indifference exists where an intent to take life exists but is not directed toward any particular person and where the lives of many are put in jeopardy “under circumstances evincing great depravity and utter recklessness in regard to human life”]).
*218 In 1972, however, in People v Poplis (30 NY2d 85, 89 [1972]), which involved the death of a child who had been beaten over a five-day period, the Court of Appeals considered this issue and stated that the decision in Darry had turned on statutory language that was “subsequently corrected by amendment.” The specific amendment was not identified, however. A subsequent statement by the Court of Appeals described this requirement (that the lives of many must be endangered) as having been “summarily declared dead in People v Poplis” (People v Sanchez, 98 NY2d 373, 383-384 [2002]).
Despite possible confusion about when the change occurred, it is now accepted that depraved indifference crimes can encompass both multiple-potential-victims situations and situations where the risk of harm was directed at only one other individual (see e.g. People v Gonzalez, 1 NY3d at 467; People v Bowman, 48 AD3d 178 [1st Dept 2007]; People v Atkinson, 21 AD3d 145 [2d Dept 2005]; People v Strawbridge, 299 AD2d 584 [3d Dept 2002], lv denied 99 NY2d 632 [2003]; People v Brooks, 117 AD2d 972 [4th Dept 1986]; People v Robinson, 43 AD2d 963 [2d Dept 1974]).
It is only in “rare” circumstances, however, that conviction of a depraved indifference crime will result from one-on-one violence (People v Suarez, 6 NY3d at 210). In Suarez, the Court of Appeals recognized only two fact patterns in which defendants had been convicted of depraved indifference crimes in situations involving one-on-one violence: (1) “when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die” and (2) “when a defendant — acting with a conscious objective not to kill but to harm — engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim” (id. at 212). In these situations, the conviction of a depraved indifference crime must be based on proof of “wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator’s inexcusable acts” (id. at 213; see also People v Payne, 3 NY3d at 271 [“We have recognized another species of depraved indifference murder in which the acts of the defendant are directed against a particular victim but are marked by uncommon brutality — coupled not with an intent to kill . . . but with depraved indifference to the victim’s plight”]). As one would expect, most instances in which *219 one-on-one violence has been held to be carried out with depraved indifference the victims are most vulnerable: infants and very young children (see People v Poplis, 30 NY2d 85 [1972]; People v Bryce, 88 NY2d 124 [1996]; People v Baker, 58 AD3d 1069 [3d Dept 2009], affd 14 NY3d 266 [2010]; People v Manos, 73 AD3d 1333 [3d Dept 2010]; People v Varmette, 70 AD3d 1167 [3d Dept 2010], lv denied 14 NY3d 845 [2010]).
In some instances, however, particularly wanton and brutal violence toward an older child or adult has been held to constitute depraved indifference. These include:
People v Kibbe (35 NY2d 407 [1974]): Defendants, who had observed the victim become extremely drunk at a bar, ultimately being denied further service, decided to steal his money and offered him a ride. After stopping for additional drinks, they took the money, making him take off his outer clothes, lower his trousers, raise his shirt, and remove his shoes to be sure none was hidden. He was then pushed out of the car onto the side of a highway, when the temperature was around zero and there was no lighting or building within half a mile. The victim, who took no measures to re-dress himself, was later struck by a truck, when the driver did not see him in time to react.
People v Roe (74 NY2d 20, 26 [1989]): Defendant, a high school student, loaded a mix of “live” and “dummy” shells into a shotgun, pumped a shell into the chamber without determining whether it was live or dummy, pointed the shotgun at a 13-year-old companion 10 feet away, said “Let’s play Polish roulette” and “Who is first?,” and pulled the trigger. The shell was a live one and the victim died of massive chest wounds.
People v Best (85 NY2d 826 [1995], affg 202 AD2d 1015 [4th Dept 1994]): Mother repeatedly beat her nine-year-old son, to the point that he had large open wounds on his body which became infected and led to septicemic infection. He became weakened, disoriented, and eventually lost consciousness, dying when he asphyxiated in his own vomit.
People v Mills (1 NY3d 269 [2003]): Teenager pushed a young boy into the water, watched him submerge without resurfacing, falsely informed his friends that the boy was in fact swimming away, and abandoned the drowning boy to die.
People v Yellen (30 AD3d 634 [3d Dept 2006], lv denied 8 NY3d 951 [2007]): After a night of drinking, defendant stabbed and punched his girlfriend and during the night, as she lay bleeding and injured on the floor, he discharged a shotgun near *220 her and forced her to perform oral sex. (The defendant was convicted of reckless endangerment in the first degree.)
Actions taken, or omitted, by a defendant after he or she has inflicted harm cannot satisfy the elements of a depraved indifference prosecution if the violent acts themselves do not satisfy those criteria. In the two cases consolidated in the Suarez decision, one defendant (Suarez) intentionally and maliciously inflicted serious wounds and then abandoned his victim without summoning aid, while the other (McPherson) inflicted serious wounds in the course of an escalating argument but then summoned medical assistance for the victim. Both victims ultimately died, and in both cases the prosecution argued that the defendants’ subsequent action had shown them to be guilty of depraved indifference. The Court of Appeals rejected this argument in both cases, stating that “irrespective of what the actor does or does not do after inflicting the fatal injury, depraved indifference murder is not made out unless the core statutory requirement of depraved indifference is established.” (6 NY3d at 210; see also People v Mancini, 7 NY3d 767 [2006] [where defendant seriously injured her victim in self-defense and then left without seeking help, the core statutory requirement of depraved indifference is missing]; accord People v Wright, 63 AD3d 1700 [4th Dept 2009].)
On the other hand, “[t]he mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence” (People v Feingold, 7 NY3d at 296). In this respect, failure to obtain medical assistance for an injured victim can be seen as relevant to the issue of whether the defendant acted with depraved indifference (People v Bowman, 48 AD3d 178, 185-186 [2007], lv denied 10 NY3d 808 [2008]), because it can provide additional evidence of the defendant’s indifference to whether the victim lives or dies (People v Manos, 73 AD3d 1333 [3d Dept 2010]; People v Varmette, 70 AD3d 1167, 1171 [2010]; People v Gratton, 51 AD3d 1219 [3d Dept 2008], lv denied 11 NY3d 736 [2008]; People v Nunez, 51 AD3d 1398 [4th Dept 2008], lv denied 11 NY3d 792 [2008]; People v Ford, 43 AD3d 571 [3d Dept 2007], lv denied 9 NY3d 1033 [2008]). By the same reasoning, this court believes that a defendant who takes immediate action to summon medical assistance for the victim in order to prevent death, further injury or prolonged pain provides circumstantial evidence that he or she was not callously indifferent to the victim’s fate.
*221 Underlying Facts and Discussion
At the time of the incident, defendant was living with his second wife and seven children, who ranged in age from 12 years to 18 months. Four of the children were defendant’s children from his first marriage; two were from Amanda HakimPeter’s first marriage; and an 18-month-old child was the couple’s own. Amanda Hakim-Peters held a job outside the home, and consequently it was defendant who was with the children the majority of the time.
The only eyewitnesses to the altercation between defendant and Salih, his 12-year-old son, were Salih’s brothers and sisters, and all except his 18-month-old sister testified at trial. Because of their ages and the lapse of approximately a year between the incident and their testimony, the children’s accounts were somewhat incomplete and occasionally contradictory. The court is mindful that it cannot consider the credibility or weight of testimony or other trial evidence when determining whether it was legally sufficient to support a conviction.
Based on all of the evidence, including the children’s testimony, it is undisputed that on March 11, 2009, defendant and his oldest child, Salih, got into a serious argument. The argument became physical, with defendant admittedly assaulting his much-smaller son. When defendant realized that Salih was unconscious, he stopped the assault, attempted to revive his son, and called 911 for help. Salih was taken by ambulance to Ellis Hospital, where he was intubated, and then to Albany Medical Center, where he remained in a coma for seven days. Thereafter, Salih spent five weeks at Sunnyview Rehabilitation Hospital before graduating to an outpatient rehabilitation program. His injuries were very serious, and the fact that he was almost completely recovered a few months after the injury was nothing short of miraculous.
Salih’s brothers and sisters testified, and defendant himself confirmed, that the argument leading up to the assault was part of an ongoing disagreement regarding Salih’s failure to live up to his father’s expectations.[9] The nature of the physical contact between defendant and his son and the duration of such contact are the facts most critical to the determination of whether de *222 fendant acted with depraved indifference in carrying out the assault.
The most unfavorable account of events, pieced together by crediting only that testimony most favorable to the People, would be as follows: During the initial interaction, defendant either punched Salih in the shoulder, “popped” him on the back, or pushed him. Later, the argument resumed. When Salih said that he wanted to be able to drink and smoke like other boys, this apparently enraged his father. Defendant grabbed him with both hands near the neck or shoulder, lifted him up briefly, and then threw him downward, causing his head to hit the floor hard. Salih’s head then hit the floor three or four more times (according to one of Salih’s brothers) or defendant got down on his knees and “picked [Salih’s head] up and put it down” two or three times (according to one of his sisters). The assault produced the following injuries: (1) bruising (raised hematomas) on the upper right side of his face near the eye and on the left side near the hairline, which would have been caused by direct trauma such as his head making contact with the floor; (2) an area of redness across Salih’s throat, under his Adam’s apple, which was not raised and which was caused by pressure, stretching or abrasive force; (3) indications of hypoxic or ischemic (lack of oxygen) injuries in the brain that are consistent with a number of medical causes including strangulation; and (4) bleeding in the center of the brain and damage to nerve fibers on the surface of the brain, both of which would have been caused when his head hit a hard object such as the floor with a “considerable” amount of force, causing movement and twisting of the brain within the skull.
There is no dispute that Salih’s injuries, particularly the last-noted bleeding and nerve damage within the brain, were extremely serious and could have proved fatal. The gravity of defendant’s actions, and the unconscionable risk of harm that they carried, cannot and should not be minimized or condoned (see e.g. People v Long, 294 AD2d 614 [3d Dept 2002], lv denied 98 NY2d 652 [2002] [father who intended to physically injure his daughter, as opposed to merely disciplining her, guilty of assault and endangering the welfare of a child]; People v LeBlanc, 199 AD2d 584 [3d Dept 1993], lv denied 82 NY2d 926 [1994] [father convicted of assault for seriously injuring son]). In fact, if the standard for depraved indifference were still that as established by Register and Sanchez, it could be argued that the evidence was legally sufficient to support the conviction, *223 because, given the weight and height difference between defendant and his son, an assessment of objective circumstances could suggest that there was a significant risk of serious harm from any physical confrontation between two such individuals.
This is no longer the legal standard, however, and the court must consider instead the evidence as it relates to defendant’s state of mind when he initiated and carried out the physical confrontation with his son. Even if the trial evidence supported the prosecution’s disproportionately negative account of events, it would not have permitted a conclusion that defendant was acting with “utter disregard for the value of human life” or that he simply didn’t care whether or not grievous harm would result from his actions (People v Valencia, 14 NY3d 927, 929 [2010], quoting People v Feingold, 7 NY3d at 296; People v Morris, 299 AD2d 655 [3d Dept 2002], lv denied 99 NY2d 583 [2003]). The actions of the defendants in Kibbe, Roe, Best, Mills, and Yellen, described above, are qualitatively different and far more “depraved.” Furthermore, if there was any question as to defendant’s mens rea, the prompt action he took to care for and summon help for Salih, as soon as he discovered he was unconscious, provides convincing circumstantial evidence that despite his initial anger and his admitted loss of control over his temper, defendant was anything but callously indifferent to the life and well-being of his son. Accordingly, the court must conclude that the trial evidence was not legally sufficient to sustain a conviction for either assault in the first degree or reckless endangerment in the first degree.
Defendant’s CPL 290.10 (1) motion for a trial order of dismissal is denied because the evidence was legally sufficient to support conviction of the lesser included offenses of assault in the third degree and reckless endangerment in the second degree. For this reason, defendant’s CPL 330.30 (1) motion is granted only to the extent that the verdict is modified by changing it to a conviction for the lesser included offense of assault in the third degree (Penal Law § 120.00 [2] [class A misdemeanor]) and reckless endangerment in the second degree (Penal Law § 120.20 [class A misdemeanor]).
[Portions of opinion omitted for purposes of publication.]

. Penal Law § 15.05 (3) defines the culpable mental state of recklessness as “ disregard[ing] a substantial and unjustifiable risk” and requires that the “risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.”

. A person is guilty of assault in the third degree if he or she “recklessly causes physical injury to another person.” (Penal Law § 120.00 [2].) Reckless endangerment in the second degree requires proof that the defendant “recklessly engage[d] in conduct which create[d] a substantial risk of serious physical injury to another person.” (Penal Law § 120.20.)

. CPL 70.10 (1) defines legally sufficient evidence as “competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof.”

. Other types included in the nonexclusive list are determinations that a ruling or instruction of the court deprived the defendant of a fair trial (subd [4] [a]) or that the sentence was unauthorized, illegally imposed or otherwise invalid (subd [4] [c]). On the other hand, a determination that the verdict was against the weight of the evidence is one made “on the facts” (CPL 470.15 [5] ).

. There are two appellate decisions that appear to suggest that a trial court has the power to make this type of modification in response to a CPL 290.10 motion for a trial order of dismissal (People v Newkirk, 75 AD3d 853, 859 [3d Dept 2010] [“the court should have reduced the convictions to the lesser included offense supported by the evidence”]; People v Smith, 183 AD2d 653, 656 [1st Dept 1992], lv denied 80 NY2d 910 [1992] [trial court “should have reduced the conviction to the greatest lesser included offense supported by legally sufficient evidence as of the time the motion was made”]). However, CPL 290.10 grants no such authority, in contrast to CPL 330.30, which expressly authorizes the trial court to modify a verdict when such modification would be required as a matter of law on appeal.

. Defendant also argues that his acts were intentional, in which case they could not satisfy the requirement of recklessness, because one who acts intentionally cannot at the same time act recklessly (People v Gallagher, 69 NY2d 525, 529 [1987]). Reviewing the evidence presented at trial, the court is unable to conclude, as a matter of law, that it would support only a finding of intentional conduct.

. A person acts intentionally when his conscious objective is to engage in certain conduct or to cause a particular result (Penal Law § 15.05 [1]).

. There has been some uncertainty about the date on which this new rule of law took effect. The Court of Appeals has held that it does not apply retroactively in collateral review of convictions that became final in 2001 (Policano v Herbert, 7 NY3d 588 [2006]) but that it is to be applied to cases that were still on direct appeal when Feingold was decided in 2006 and in which the defendant “adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction” (People v Jean-Baptiste, 11 NY3d at 542). As to cases that became final at some point between those two dates, the Third Department has held that the new, post -Register standard is applicable to those that were not yet finally decided in 2004, when the Court of Appeals issued the decision in People v Payne (People v Baptiste, 51 AD3d 184, 185 [2008], lv denied 10 NY3d 932 [2008], accord People v Strawbridge, 76 AD3d 115 [3d Dept 2010]; see also People v Florestal, 53 AD3d 164, 169 [1st Dept 2008] [Feingold standard applies to case tried in 2006, after Suarez decision]; People v Epps, 38 AD3d 916 [2d Dept 2007], lv denied 9 NY3d 843 [2007] [neither Payne nor Suarez are to be applied retroactively]).

. Salih himself had no memory of the events of March 11, 2009 and, in fact, only partially recalled his time at Sunnyview. He was asked no questions about his general relationship with his father or about any events leading up to the assault.