IKB Intl., S.A. v Wells Fargo Bank, N.A. (2022 NY Slip Op 05058)

IKB Intl., S.A. v Wells Fargo Bank, N.A.

2022 NY Slip Op 05058

Decided on August 30, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 30, 2022

Before: Acosta, P.J., Renwick, Singh, Moulton, Kennedy, JJ. 

Index No. 654443/15, 654442/15, 654440/15, 654439/15, 654436/15, 654438/15 Appeal No. 16049-,16050-,16051-16052-,16053 Case No. 2021-01661, 2021-01667, 2021-01680, 2021-01813, 2021-01816, 2021-01988 

[*1]IKB International, S.A. etc., et al., Plaintiffs-Respondents-Appellants,
v
Wells Fargo Bank, N.A., as Trustee (and Any Predecessors and Successors Thereto), et al., Defendants-Appellants-Respondents, ABFC 2006-OPT1 Trust et al., Nominal Defendants.
IKB International, S.A. etc., et al., Plaintiffs-Respondents-Appellants,
v
U.S. Bank, N.A., as Trustee (and Any Predecessors and Successors Thereto), et al., Defendants-Appellants-Respondents, Asset Backed Securities Corp. et al., Nominal Defendants.
IKB International, S.A. etc., et al., Plaintiffs-Respondents-Appellants,
v
HSBC Bank USA N.A., as Trustee (and Any Predecessors and Successors Thereto), Defendant-Appellant-Respondent, ACE Securities Corp. et al., Nominal Defendants.
IKB International, S.A. etc., et al., Plaintiffs-Respondents-Appellants,
v
Deutsche Bank National Trust Company, as Trustee (and Any Predecessors and Successors Thereto), et al., Defendants-Appellants-Respondents, Accredited Mortgage Loan Trust 2004-3, et al., Nominal Defendants.
IKB International, S.A. etc., et al., Plaintiffs-Respondents-Appellants,
v
LaSalle Bank N.A., as Trustee (and Any Predecessors and Successors Thereto), et al., Defendants-Appellants-Respondents, Accredited Mortgage Loan Trust 2005-3, et al., Nominal Defendants.
IKB International, S.A. etc., et al., Plaintiffs-Respondents-Appellants,
v
The Bank of New York, as Trustee (and Any Predecessors and Successors Thereto), et al., Defendants-Appellants-Respondents, Centex Home Equity Loan Trust 2004-B, et al., Nominal Defendants.

Jones Day, New York (Howard F. Sidman of counsel), for Wells Fargo Bank, N.A. and Wells Fargo Bank, N.A. as successor by merger to Wells Fargo Bank Minnesota, N.A., appellants-respondents.
Jones Day, New York (David F. Adler and Michael T. Marcucci of counsel), for U.S. Bank National Association and U.S. Bank Trust National Association, appellants-respondents.
Morgan Lewis & Bockius, LLP, New York (Michael S. Kraut of counsel), for Deutsche Bank National Trust Company and Deutsche Bank National Trust Company Americas and Deutsche Bank Trust Company Americas appellants-respondents.
Winston & Strawn LLP, New York (Alan A. Stevens of counsel), and Munger, Tolles & Olson LLP, Los Angeles, CA (Jacob S. Kreilkamp, of the bar of the State of California, admitted pro hac vice, of counsel), for Bank of America N.A., and Bank of America, N.A., as successor to LaSalle Bank, N.A., appellants-respondents.
Mayer Brown LLP, New York (Christopher J. Houpt of counsel), for The Bank of New York, BNY Western Trust Company, The Bank of New York Trust Company, N.A., The Bank of New York Mellon Corporation, N.A., and The Bank of New York Mellon Trust Company, N.A., appellants-respondents.
Schlam Stone & Dolan LLP, New York (Seth D. Allen of counsel), and John J.D. McFerrin-Clancy, New York for respondents-appellants.

Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered on or about January 28, 2021, which, insofar as appealed from as limited by the briefs, denied defendants' motions to dismiss the pre-Event of Default representation and warranty repurchase enforcement breach of contract claims, the post-Event of Default breach of contract claims, and the breach of conflict of interest and post-Event of Default breach of fiduciary duty claims, and granted the motions as to the pre-Event of Default document defect repurchase enforcement claims, modified, on the law, to grant the motions as to the post-Event of Default breach of contract claims insofar as related to the subset of trusts governed by pooling and servicing agreements (PSAs) requiring written notice from an authorized party to constitute an event of default and the post-Event of Default breach of fiduciary duty claims insofar as based on alleged failures to act as contractually required, and to deny the motions as to the pre-Event of Default document defect repurchase enforcement claims, and otherwise affirmed, without costs.[FN1]
Plaintiffs purchased residential mortgage-backed securities (RMBS) certificates issued by RMBS trusts for which defendants served as the trustees. In six separate actions brought in May 2016, plaintiffs allege that their investments are almost worthless as a result of defendants' breaches of their contractual, fiduciary, and statutory duties.
Plaintiffs' noncompliance with the no-action clauses in the governing agreements is not a ground for dismissal of the complaints. Plaintiffs' compliance was excused because "it would be futile to demand that the trustee commence an action against itself," and "[o]nce performance of the demand requirement in the no-action clause is excused, performance of the entire provision is excused, including the requirement that demand be made by 25% of the certificate holders" (Blackrock Balanced Capital Portfolio (FI) v U.S. Bank N.A., 165 AD3d 526, 528 [1st Dept 2018]).
Supreme Court correctly declined to dismiss the pre-Event of Default (EOD) representations and warranties repurchase enforcement claims involving those governing agreements where the repurchase protocol is silent as to any enforcement mechanism, including specifying the party responsible for its enforcement.
Defendants' duties as trustees arise solely from contract. Accordingly, whether a duty exists depends on interpreting the relevant agreements. "The best evidence of what parties to a written agreement intend is what they say in their writing" (Slamow v Del Col, 79 NY2d 1016, 1018 [1992]). A contract should be read as a "harmonious and integrated whole," and each and every part should be given "effect" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017] [internal quotation marks omitted]). "Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular [*2]words or phrases" (id.). Nor should an agreement be read to produce a result that is "absurd, commercially unreasonable or contrary to the reasonable expectations of the parties" (Matter of Lipper Holdings v Trident Holdings, 1 AD3d 170, 171 [1st Dept 2003] [internal citations omitted]; see also Matter of Provident Loan Socy. of N.Y. v 190 E. 72nd Corp., 173 AD3d 531, 531 [1st Dept 2019]).
Contrary to the partial dissent's view, Supreme Court correctly found that the provision that "[t]he Trustee agrees to . . . exercise the rights referred to above for the benefit of all present and future [certificateholders]" imposed an express duty on the trustees to enforce the repurchase protocol for the benefit of the investors (see Royal Park Invs. SA/NV v Deutsche Bank Natl. Trust Co., 2016 WL 439020, *4, 2016 US Dist. LEXIS 12982, *11-12 [SD NY, Feb. 3, 2016, No. 14-CV-4394 (AJN)]; but see Commerzbank AG v U.S. Bank N.A., 457 F Supp 3d 233, 257-258 [SD NY 2020];Western & S. Life Ins. Co. v Bank of N.Y. Mellon, 2019-Ohio-388,129 NE3d 1085, 1093-1094 [2019]). Notably, defendants do not dispute plaintiffs' assertion that "the rights referred to above" include the right to have noncompliant loans repurchased, nor do they attempt to otherwise explain what rights are "referred to above."
Moreover, this express language is not discretionary, as defendants and our partially dissenting colleagues maintain. As our colleagues point out, the provision does not use the language "shall" or "must." However, the provision employs the language "agrees to," which is also language of commitment (see Davies, Hardy, Ives & Lawther v Abbott, 38 NY2d 216, 219 [1975] ["[i]t is even clearer, in our view, that the use of the verbal phrase, 'agrees to assume' can only be understood as manifesting a commitment to some obligation"]). Notably, the provision could have, but did not, provide that the trustee "may" or "has the discretion to" exercise the rights (see e.g. Freedom Mtge. Corp. v Engel, 37 NY3d 1, 21 [2021] [where "mortgages provide that the noteholder 'may' require immediate payment of the outstanding debt . . . [i]t is plain from this language that whether to exercise this contractual right is a matter within the noteholder's discretion"]). Nor can we add such discretionary language to the governing agreements where none exists (see Nomura, 30 NY3d at 581).[FN2] Because we find this duty is specifically set forth in the agreements, we read this provision in harmony with Section 8 and do not ignore that section, contrary to the partial dissent's assertion.
The partial dissent incorrectly contends that we conflate duties and rights. Rather, the two are distinct in our analysis. In the language quoted above, "agrees to" imposes a duty on the trustees. The right of the investors is embodied in the repurchase protocol. The partial dissent's analysis denies the duty and orphans the right.
The partial dissent cites Prickett v New York Life Ins. Co. (896 F Supp 2d 236, 251-252 [*3][SD NY 2012]) to support its argument that certain rights are discretionary. While we agree that discretionary language cannot create an affirmative duty, we disagree with the conclusion that the language here is discretionary, as it was in Prickett. Notably, Prickett is inapposite because the relevant agreement gave the defendant New York Life the "discretion" to "deem investments inappropriate for its policyholders" (id. at 242). Thus, the federal court correctly rejected the plaintiff's duty argument on the basis that "the contract says that New York Life may do these things and has discretion to do these things; it does not say that New York Life must do those things" (id. at 251). Such discretionary language is not at issue here.
Defendants' argument that the provision was intended only to express that the property is held for the benefit of another to satisfy the trust law is also without merit. The provision already satisfies that criterion by stating that "[t]he Trustee agrees to hold the Trust Fund . . . for the benefit of all present and future [certificateholders]." Defendants' trust law argument is a veiled attempt to improperly "excise" the remaining portion of the sentence in which the trustee agrees to "exercise the rights referred to above" (Nomura, 30 NY3d at 581). Defendants' explanation that the provision was merely meant to clarify "for whom" the trustee exercises rights undermines their argument by acknowledging that there are in fact rights to exercise.
The fact that no enforcement mechanism is expressed within the repurchase protocol is not dispositive. Nor is it relevant that separate agreements specify the party responsible for enforcement of the repurchase protocol because the agreements at issue here purportedly do not specify the responsible party (see e.g. Schonfeld v Thompson, 243 AD2d 343, 343 [1st Dept 1997] ["separate written agreements involving different parties, serving different purposes and not referring to each other were not intended to be interdependent or somehow combined to form a unitary contract"]; see also Fundamental Long Term Care Holdings, LLC v Cammeby's Funding LLC, 20 NY3d 438, 445 [2013] [agreements are considered separate where the breach of one agreement would not undo the obligations imposed by the other]).
The partial dissent erroneously looks to other agreements in its analysis. It is well settled that separate writings "must be read together as one" when they "were executed at substantially the same time, related to the same subject-matter, were contemporaneous writings, . . . effectuate the same purpose and formed a part of the same transaction" (Nau v Vulcan Rail & Constr. Co., 286 NY 188, 197 [1941]). That is not the case here, where the numerous agreements at issue involved different parties, were executed on different days, and effectuate different purposes. Accordingly, they cannot be read together to reach our partially dissenting colleagues' conclusion that the drafters omitted [*4]a pre-EOD duty of the trustee. The other agreements are, therefore, irrelevant to determining the meaning of "agrees to."
The partial dissent's reliance on Quadrant Structured Prods. Co., Ltd. v Vertin (23 NY3d 549, 560 [2014] ["Even where there is ambiguity, if parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission"])is also misplaced, as Quadrant invokes a principle of contract construction for ambiguous contracts. Here, plaintiffs do not contend that the agreements are ambiguous. In any event, our dissenting colleagues err by turning to other contracts that, for reasons previously discussed, are not "similar contracts" (id.).
In addition, interpreting the provision as imposing an express duty on the trustees avoids a result that is "absurd, commercially unreasonable or contrary to the reasonable expectations of the parties" (Lipper Holdings, 1 AD3d at 171). If no party to the agreement has the obligation to enforce the repurchase protocol in the event of the obligor's breach, the repurchase protocol is effectively nullified (see Natixis Real Estate Capital Trust 2007-HE2 v Natixis Real Estate Holdings, LLC, 149 AD3d 127, 139 [1st Dept 2017] [sponsor's reading of the repurchase protocol "fails common sense" because it "carried no contractual repercussions" and "allow[ed] it to sit on its hands," which would "effectively nullify the . . . language of the repurchase protocol"]; cf. Matter of Part 60 Put-Back Litig., 36 NY3d 342, 348 [2020] [a "sole remedy provision [that] purports to limit, but not eliminate, the remedies available to the plaintiff in the event of a breach" is enforceable]). Because each agreement must be read separately, and at issue are those agreements for which no enforcer is specified, we must read the language "agrees to" in a manner that does not render the agreement meaningless. For the reasons discussed above, the partial dissent errs in turning to other agreements to address our nullification concern. In any event, the partial dissent's interpretation concedes our point that the repurchase protocol, if read as the partial dissent proposes, is nullified. The partial dissent also urges that we remand for consideration of a second issue: the viability of plaintiffs' post-EOD breach of contract claims in light of the Court of Appeals' decision in U.S. Bank, N.A. v DLJ Mtge. Capital, Inc. (38 NY3d 169 [2022]). DLJ analyzes the specific contractual language operative in that case concerning post-EOD notice. DLJ was issued after the briefs and record on the present appeals were submitted, but well before oral argument, yet defendants made no attempt to deploy it. By contrast, the defendants in Western & Southern raised the issue presented by DLJ before the trial court and on appeal, and submitted further letters briefing the issue after DLJ was published. Defendants here had ample opportunity to raise an argument [*5]akin to those in DLJ, as the precedent relied on by the Court of Appeals in DLJ has been extant for years.[FN3] Where defendants did not raise the issue, did not cite any of the precedent relied upon in DLJ, and did not seek to add any further argument once the Court of Appeals issued DLJ, we should not be raising this issue on their behalf.[FN4] Even assuming that the loan-specific notice requirement in DLJ should be extended beyond the facts of that case, defendants herein have made no effort to show that the language in the operative agreements is analogous to the contractual language at issue in DLJ or in the precedent upon which the DLJ court relies (see Misicki v Caradonna, 12 NY3d 511, 519 [2009] [courts are "not in the business of blindsiding litigants" by reaching issues not raised by the parties and are "not freelance lawyers"]).
Supreme Court erred in dismissing the pre-EOD document defect repurchase enforcement claims as time-barred. The court's reasoning and the cases it relied on relate to the timing of the breaches of defendants' document defect identification duties, not of their document defect repurchase enforcement duties. The accrual of the latter claims cannot be decided on the pleadings (see Western & S. Life Ins. Co. v U.S. Bank, N.A., 69 Misc 3d 1213[A], 2020 NY Slip Op 51307[U], *5-6 [Sup Ct, NY County 2020], affd as mod _AD3d _, 2022 NY Slip Op 04886 [2022]; MLRN LLC v U.S. Bank N.A., 2019 NY Slip Op 33379[U], *7-9 [Sup Ct, NY County 2019], affd on other grounds 190 AD3d 426 [1st Dept 2021]). The governing agreements did not specify how soon after the sellers' failure to cure that defendants were required to initiate a putback action, and what would be a reasonable time, in lieu of a specified time, cannot be determined at this stage (see Savasta v 470 Newport Assoc., 82 NY2d 763, 765 [1993]).
However, the court should have dismissed the post-EOD breach of contract claims as to the subset of trusts governed by PSAs requiring written notice to constitute an EOD, because plaintiffs' allegations of written notice are insufficient. Although plaintiffs allege numerous potential sources of such notice, they do not allege that any of them came from a party authorized to provide such notice — i.e., a depositor, trustee, or specified percentage of certificateholders (see Bakal v U.S. Bank N.A., 747 Fed Appx 32, 35-36 [2d Cir 2019]; Millennium Partners, L.P. v U.S. Bank N.A., 2013 WL 1655990, *4, 2013 US Dist LEXIS 55729, *12-13 [SD NY, Apr. 17, 2013, No. 12 Civ 7581 (HB)], affd sub nom. Millennium Partners, L.P. v Wells Fargo Bank, N.A., 654 Fed Appx 507 [2d Cir 2016]).
The prevention doctrine, which "precludes a party from arguing that its performance under a contract has not been triggered by a condition precedent, when its nonperformance has been caused by that party," is not applicable here (Blackrock, 165 AD3d at 527; see also Fixed Income Shares: Series M v Citibank, N.A., 157 AD3d 541, 542-543 [1st Dept 2018]). Plaintiffs' claims [*6]that defendants had a policy to avoid declaring EODs in order to avoid triggering their post-EOD duties are not properly considered, as they are not supported by any allegations in the instant complaints.
The court correctly declined to dismiss the post-EOD breach of contract claims as to the indenture trusts. Plaintiffs' allegations of representation and warranty breaches, and servicer failures that were known to and unremedied by the trustees and servicers, are sufficient to allege a breach of the issuer's duty to "cause" the trustee or servicer to enforce the trusts' rights (see Royal Park Invs. SA/NV v HSBC Bank USA, N.A., 109 F Supp 3d 587, 604-605 [SD NY 2015]).
The court also correctly declined to dismiss the post-EOD breach of contract claims on the basis of insufficient allegations of the trustees' actual knowledge or written notice of an EOD. Plaintiffs allege that the trustees received written notice of servicing breaches from investors and insurers, and in connection with governmental investigations and private litigation, and that the breaches were also evident from the servicers' written reports. Similar allegations have been found sufficient by other courts (see Pacific Life Ins. Co. v Bank of N.Y. Mellon, 2018 WL 1382105, *9-10, 2018 US Dist LEXIS 43602, *24-28 [SD NY, Mar. 16, 2018, No. 17- Civ-1388 (KPF)]; Phoenix Light SF Ltd. v Deutsche Bank Natl. Trust Co., 172 F Supp 3d 700, 715-716 [SD NY 2016]; Royal Park Invs. SA/NV v Bank of N.Y. Mellon, 2016 WL 899320, *6, 2016 US Dist LEXIS 26793, *17-20 [SD NY, Mar. 2, 2016, No. 14-Civ-6502 (GHW)]; Royal Park Invs. SA/NV v Deutsche Bank Natl. Trust Co., 2016 WL 439020, *8, 2016 US Dist LEXIS 12982, *26; Fixed Income Shares: Series M v Citibank N.A., 130 F Supp 3d 842, 856 [SD NY 2015]; Royal Park Invs. SA/NV v HSBC Bank USA, N.A., 109 F Supp 3d at 606).
The court correctly declined to dismiss the breach of conflict of interest and post-EOD breach of fiduciary duty claims on the basis of the economic loss doctrine — except insofar as the latter set of claims is based on defendants' failure to act as contractually required. This subset of claims must fail because they flow from the violation of the governing agreements; the remaining claims (including the post-EOD breach of fiduciary duty claims based on duties exceeding those outlined in the agreements) flow from the violation of extracontractual, professional duties (see Pacific Life, 2018 WL 1382105 , *13-14, 2018 US Dist LEXIS 43602, *39-41, citing BlackRock Allocation Target Shares: Series S. Portfolio v Wells Fargo Bank, N.A., 247 F Supp 3d 377, 399-400 [SD NY 2017]). Contrary to defendants' contention, plaintiffs allege that the breach of these extracontractual duties caused damages separate from the damages caused by the breaches of their contractual duties. That these damages may be of the same type does not matter, so long as they did not flow from the breach of contract.
All concur except Renwick and Singh, JJ., who dissent[*7]
in part in a memorandum by Singh, J., as follows:

SINGH, J. (dissenting in part)I dissent on two threshold issues. First, the agreements do not state that the trustee is under a pre-Event of Default (pre-EOD) affirmative duty to enforce the seller's repurchase obligations. The majority, in the guise of contract interpretation, creates an affirmative duty not found in the agreements. Second, to the extent that the agreements require written notice to be given to the trustee in the event of an EOD, I would vacate the motion court's decision on this issue and remand for a determination whether the written notice was sufficiently specific to permit the post-Event of Default (post-EOD) claims to proceed under U.S. Bank N.A. v DLJ Mtge. Capital, Inc. (38 NY3d 169 [2022]).

The majority concedes that it is not following our precedent in Western & Southern Life Insurance Co. v U.S. Bank National Association (— AD3d &mdash, 2022 NY Slip Op 04886 [1st Dept 2022]) (see Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d 799, 819-820 [2015]; People v Hobson, 39 NY2d 479, 488-491 [1976] ["Always critical to justifying adherence to precedent is the requirement that those who engage in transactions based on the prevailing law be able to rely on its stability. This is especially true in cases involving . . . contractual rights"]; People v Aarons, 305 AD2d 45, 56 [1st Dept 2003] ["A court is an institution whose adherence to soundly reasoned precedent is essential to our system of jurisprudence . . . . Only compelling circumstances should require us to depart from this doctrine"]). The majority can point to no compelling circumstances to warrant deviation from our precedent. Disagreements with our precedent should not be a reason to cast a blind eye to our holding in Western & Southern (see Franchise Tax Bd. of Cal. v Hyatt, — US &mdash, &mdash, 139 S Ct 1485, 1506 [2019, Breyer, J., dissenting] ["[J]udges may be tempted to seize every opportunity to overrule cases they believe to have been wrongly decided. But the law can retain the necessary stability only if this Court resists that temptation, overruling prior precedent only when circumstances demand it"]). This deviation will cause confusion and uncertainty for the trial courts and litigants when faced with two contrary lines of cases on important RMBS issues within this Department. In any event, the majority's reading of these financial agreements is tenuous at best.
Our cardinal rule of contract interpretation is that all parts of an agreement must be given meaning (HTRF Ventures, LLC v Permasteelisa N. Am. Corp., 190 AD3d 603, 607 [1st Dept 2021] ["A contract should be read as a harmonious and integrated whole so as to give effect to its purpose and intent, and must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect"] [internal quotation marks omitted]; Macy's Inc. v Martha Stewart Living Omnimedia, Inc., 127 AD3d [*8]48, 54 [1st Dept 2015] ["Thus, the rules of construction of contracts require the court to adopt an interpretation which gives meaning to every provision of a contract"] [internal quotation marks and brackets omitted]). "Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017]).
By imposing an affirmative pre-EOD duty on the trustee, the majority fails to give any meaning to section 8, titled "Duties of Trustees."[FN5] This provision expressly and unambiguously states that prior to an EOD, the trustee "undertakes to perform such duties and only such duties as are specifically set forth in this Agreement" and that "[a]ny permissive right of the Trustee enumerated in this Agreement shall not be construed as a duty." The provision further states that "the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee . . . ."
The majority points to section 2.06 of the agreements as justification for inferring that an affirmative pre-EOD repurchase protocol duty exists. This provision states that
"The Trustee agrees to hold the Trust Fund and exercise the
rights referred to above for the benefit of all present and
future Holders of the Certificates and to perform the duties
set forth in this Agreement to the best of its ability, to the end
that the interests of the Holders of the Certificates may be
adequately and effectively protected."
Unlike other provisions, section 2.06 is silent as to the trustee's duties regarding the repurchase protocol. Nor is any duty to enforce the repurchase obligation "specifically set forth." Instead, the provision refers generally to "rights," stating for whom — "all present and future" certificateholders — the trustee "agrees to" exercise the rights and to perform duties. The agreements generally provide that the rights and responsibilities of the trustee include such actions as to "cause the Custodian to review each Mortgage File" within certain days after the closing date (see e.g. CBASS 2006-CB9, PSA § 2.02).
Significantly, in other RMBS litigation, section 2.06 has been found by courts to lack the specificity to impose an affirmative pre-EOD duty on the trustee (see Commerzbank AG v U.S. Bank N.A., 457 F Supp 3d 233, 257-258 [SD NY 2020] ["This provision does not require U.S. Bank to enforce the obligations of other deal parties to repurchase loans"]; Western & S. Life Ins. Co. v Bank of N.Y. Mellon, 2019-Ohio-388, 129 NE3d 1085, 1093-1094 [2019] [the trustee's duty [*9]to substitute or repurchase mortgage loans must be specifically set forth in the Pooling and Servicing Agreement]; but see IKB Intl., S.A. v LaSalle Bank N.A., 2021 NY Slip Op 30265[U], *28-29 [Sup Ct, NY County 2021]; Royal Park Invs. SA/NV v Deutsche Bank Natl. Trust Co., 2016 WL 439020, *4, 2016 US Dist LEXIS 12982, *11-12 [SD NY Feb. 3, 2016, No. 14-CV-4394 (AJN)]). The rationale for these holdings is persuasive. Since the trustee's duties are limited to what is specifically set forth, had the drafters intended for the trustee to enforce the repurchase protocol, that pre-EOD duty would have been expressly stated in the agreements.
The drafters understood what language to employ when it was intended that a party, including the trustee, assumed a pre-EOD duty. For example, in SABR 2006-OP1, PSA § 2.03 (c), the provision provides that "[u]pon discovery by . . . the Trustee . . . of a breach of any of the foregoing representations and warranties, the party discovering such breach shall give prompt written notice to the others" (emphasis added). This notice duty is specifically set forth. In stark contrast, section 2.06 lacks specificity concerning when, why, and how the repurchase protocol is triggered.
The majority's result that the trustee's general nonspecific rights create an affirmative pre-EOD duty is reached by conflating rights and duties. This interpretation fails to give meaning to all the terms and renders contractual provisions meaningless (see Matter of Part 60 Put-Back Litig., 36 NY3d 342, 348 [2020] [an RMBS agreement "means what it says" and should be enforced in accordance with its express terms]. Section 8 expressly states that prior to an EOD, the trustee "undertakes to perform such duties and only such duties as are specifically set forth in this Agreement" and that "[a]ny permissive right of the Trustee enumerated in this Agreement shall not be construed as a duty." The "rights" referenced in section 2.06 are not duties (see Prickett v New York Life Ins. Co., 896 F Supp 2d 236, 251-252 [SD NY 2012] [dismissing contract claim because even though certain "rights were to be exercised for the Plaintiff's benefit," the Plaintiff had not "pleaded that [the Defendant] breached any contractual duties—as opposed to merely not doing things it had a right, but no obligation, to do"] [internal quotation marks omitted]). In fact, in Prickett, the court made a distinction between the words "must" and "may"/"discretion" (id. at 251). That distinction applies here. Plainly, the fact that the trustee has a contractual right to, for example, cause review of mortgage files, does not impose on it a duty to perform. The majority does not point to any specifically set forth provision requiring the trustee to enforce the pre-EOD repurchase obligation to repurchase defective loans.
The sophisticated parties to these complex commercial transactions chose not to impose an affirmative pre-EOD repurchase protocol duty on the trustee. General contractual [*10]language is not a basis to impose a duty when none was intended. The majority's holding is also inconsistent with the established contractual principle that where the parties omit terms found in the same or similar agreements, the omission was intentional (see Quadrant Structured Prods. Co., Ltd. v Vertin, 23 NY3d 549, 560 [2014] ["Even where there is ambiguity, if parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission"]; 260-261 Madison Ave., LLC v Bower Monte & Greene, P.C., 137 AD3d 457, 458 [1st Dept 2016]).
The majority relies on Nau v Vulcan Rail & Constr. Co. (286 NY 188 [1941])— a 1930s patent dispute involving subway turnstiles — to support its contention that the other agreements in this extensive record that the parties have placed before us cannot be looked at to ascertain what the agreements mean. This conclusion in no way follows from that decision, in which the Court of Appeals held only that multiple agreements must be read together under certain circumstances. Indeed, the Court found that agreements made to effectuate the same purpose had to be read together, despite being written on different dates. Furthermore, Nau applied the well-settled principle that the intention of the parties is determined based on the contract's language. The majority only pays lip service to this and other bedrock contract principles in creating a pre-EOD duty not specifically set forth in the agreements.
Moreover, this argument is not supported by our jurisprudence. In current RMBS litigation, courts often compare PSAs to ascertain their meaning (see DLJ Mtge. Capital, 38 NY3d at 180-183 [comparing similar repurchase protocol provisions from different RMBS litigation involving other parties]; Deutsche Bank Natl. Trust Co. v Barclays Bank PLC,34 NY3d 327, 340 [2019] [interpreting contract terms consistently with interpretation of "substantially the same contract terms in other RMBS cases"]; Western & S. Life Ins. Co., — AD3d &mdash, 2022 NY Slip Op 04886, *8 [1st Dept 2022] [finding omission of language to be intentional, based on inclusion of language in other PSAs]; Commerzbank AG, 457 F Supp 3d at 257-258 [granting summary judgment as to some claims, and denying it as to others, based on differences of language among the PSAs]; see also Quadrant Structured Prods., 23 NY3d at 561-564 [comparing contract at issue to contracts in separate litigation involving different parties]). The majority fails to provide support for its conclusory assertion that these other agreements are not similar, except that they were drafted at other times between other parties. In fact, the agreements seek to effectuate the same commercial purpose — the securitization of bundled mortgage loans — and have provisions that are substantially similar (see Deutsche Bank Natl. Trust Co.,34 NY3d at 340). These similar provisions include, for example, section 8 — central [*11]to the arguments here — which specifically relates to trustee duties, as well as provisions relating to the repurchase protocol.
It is clear from the agreements that the drafters understood what language to use to impose an affirmative duty on the trustee. For example, in other provisions, the drafters employed language to impose an affirmative duty on a party by using terms such as "shall" and "must" (see e.g. SABR 2006-OP1, PSA § 2.03 [c] ["Upon discovery by any of the Responsible Party, the Depositor, the Trustee or the Servicer of a breach of any of the foregoing representations and warranties, the party discovering such breach shall give prompt written notice to the others"]; SASCO 2002-AL2, TA § 2.04 ["Upon discovery by either the Depositor or the Trustee of a breach of any of such representations and warranties that adversely and materially affects the value of the related Assistance Loan, the party discovering such breach shall give prompt written notice to the other parties"]).
The majority expresses concern that the enforcement mechanism is "nullified" if the trustee does not enforce the repurchase protocol. This concern is unjustified. As noted earlier, the sophisticated parties specified the enforcers of the repurchase agreements in certain agreements and omitted them in others. The other agreements specify that the securities administrator, the servicer, and the seller have a pre-EOD duty (see e.g. CMLTI 2005-OPT4, PSA § 2.03 [a] ["the Servicer, to the extent it is not the Originator, the Seller or an Affiliate of the Seller, and otherwise the Trustee, . . . shall enforce the obligations of the Originator or the Seller . . . to repurchase such Mortgage Loan"]; JPMAC 2006-CW2 § 2.03 [a] [i] ["the Securities Administrator on behalf of the Trustee shall enforce the obligations . . . to repurchase such Mortgage Loan from the Trust Fund"]). Again, contrary to the majority's unsupported assertion, these similar and related agreements indicate the significance of the parties' decision to omit similar terms (see Quadrant Structured Prods., 23 NY3d at 560; see also DLJ Mtge. Capital, 38 NY3d at 180-183). Thus, where the parties intended pre-EOD repurchase duties to be enforceable, they chose to leave enforcement to others. Had the drafters intended to impose a pre-EOD duty on the trustee to enforce the repurchase obligations, the four corners of the agreements would have stated so.
Not citing to relevant RMBS precedent, the majority instead relies on Davies, Hardy, Ives & Lawther v Abbott (38 NY2d 216 [1975]), a matrimonial dispute, to support its position that a pre-EOD duty can be gleaned from the agreements. The wife in Davies sought to be completely free of any obligation in an assignment agreement that she signed, arguing that the words "agrees to assume" was found in a recital paragraph. The Court of Appeals found that the "phrase, 'agrees to assume' can only be understood as manifesting a commitment to some obligation" (id. at 219). [*12]Thus, by executing the assignment, the wife intended to be bound by the husband's share purchase agreement (see Leon v Martinez, 84 NY2d 83, 88-89 [1994][describing the standard of interpretation for an assignment agreement]). Assignment agreements are not at issue here. There is no claim that the trustee executed an assignment to assume the repurchase protocol. Unlike assignment agreements, the RMBS agreements at issue — which are the sole source of the parties' duties — do not create the risk that otherwise valid duties will be duplicated or invalidated (cf. Deep Woods Holdings LLC v Pryor Cashman LLP,145 AD3d 447, 449-450 [1st Dept 2016] [estopping interpretation of assignment contract that would preclude either assignee or assignor from bringing malpractice suit]; Wedco Fabrication, Inc. v KSW Mech. Servs., Inc., 28 AD3d 336, 337 [1st Dept 2006] [interpreting assignment contract as valid in part because defendant would not be subjected to inconsistent or duplicative litigation]). Moreover, whereas the contract in Davies "was not drafted with unmistakable clarity" (38 NY2d at 219), the agreements at issue here are complex and were drafted by commercially sophisticated parties (see e.g. Crossroads ABL LLC v Canaras Capital Mgt., LLC, 105 AD3d 645, 645 [1st Dept 2013]["Here, the language of the contract, negotiated by two commercially sophisticated parties, reinforces this Court's recognition of the distinction between the two remedies"]).
The majority also mischaracterizes the trustee's arguments. The trustee does not argue that it has no duties under the agreements, but rather that its duties arise from the specific terms of the agreements. The agreements unambiguously state that the trustee, prior to an EOD, shall perform only such duties as specifically set forth; that no implied covenants or obligations may be read into the agreements; and that the right to perform a discretionary act is not construed as a duty. Clearly, the parties intended that the agreements would expressly state when the trustee has a duty to act. The majority simply rewrites the agreements to impose a pre-EOD duty to repurchase defective loans where the parties manifest no such intention. In sum, the agreements mean what they say, namely, that the trustee does not have a specifically set forth pre-EOD repurchase protocol duty.
Finally, to the extent that the agreements required the trustee to have actual knowledge or written notice of an EOD, I would follow the precedent established by DLJ Mtge. Capital (38 NY3d 169) and Western & Southern (— AD3d &mdash, 2022 NY Slip Op 04886). In DLJ, the Court of Appeals noted that the sole remedy provision, section 2.03 (which is similar to section 2.03 in the agreements before us), required a party discovering a breach to give prompt notice, triggering the 90-day cure period. The Court found that the clause required the trustee to provide the sponsor of the trust with loan-specific notice of any breach of representations and warranties [*13]prior to bringing any breach of contract action. It reasoned that, since the structure of the repurchase protocol was phrased entirely through lens of individual mortgage loans, the parties clearly contemplated a loan-by-loan approach to the agreed-upon sole remedy for breach. Relying on DLJ, we foundin Western & Southern that, in the agreements requiring written notice of an EOD, the notice must be specific. It is insufficient to claim that a party was on notice based on governmental investigations, private litigations, or a servicer's written report. Again, while the majority chooses not to follow Western & Southern, it entirely ignores DLJ and summarily concludes that general notice is sufficient. In doing so, it fails to apply the law at the time of the decision (see People v Florestal, 53 AD3d 164, 169 [1st Dept 2008] ["[C]ases on direct appeal are generally decided in accordance with the law as it exists at the time the appellate decision is made"], quoting People v Vasquez, 88 NY2d 561, 573 [1996]; Matter of Alscot Inv. Corp. v Incorporated Vil. of Rockville Ctr., 64 NY2d 921, 922 [1985] [affirming conclusion that there was "no exception to the general rule that the law as it exists at the time a decision is rendered on appeal is controlling"]).
More importantly, the parties have not briefed this issue. We should not make this finding. Instead, we should remand for further consideration by the motion court upon full argument by the parties. The majority incorrectly asserts that I am reaching this issue. To the contrary, it is precisely to avoid reaching a decision on this issue that I would remand to Supreme Court. The majority, by contrast, implicitly finds that DLJ does not apply without giving the parties any opportunity to brief the issue.
Accordingly, I respectfully dissent to the extent the majority affirms Supreme Court's denial of the pre-Event of Default representation and warranty repurchase enforcement breach of contract claims and the post-Event of Default breach of contract claims that are based on a trustee's actual knowledge or written notice.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 30, 2022

Footnotes

Footnote 1: By letter dated May 10, 2022, defendants notified this Court that certain claims asserted by plaintiff IKB International, S.A. against defendant Bank of New York Mellon raised in Point V of defendants' appellate brief were "mooted and need not be resolved" as the result of a stipulation of voluntary discontinuance. By stipulation of withdrawal and discontinuance dated July 19, 2022, plaintiffs and defendant HSBC Bank USA, N.A. withdrew and discontinued HSBC's appeal and plaintiffs' cross appeal.

Footnote 2: Recently, a separate panel of this Court, in deciding an appeal involving the same provision at issue here, reached the opposite conclusion and relied on the same reasoning as the partial dissent in this case (see Western & S. Life Ins. Co. v U.S. Bank N.A., _AD3d_, 2022 NY Slip Op 04886 [1st Dept 2022]). The linchpin in that appeal is the conclusion that the provision's language demonstrates "that they are discussing an action that may be exercised at a party's discretion" and that a "right to do something is not the same as having the affirmative duty to do that same thing" (id., citing Prickett v New York Life Ins. Co., 896 F Supp 2d 236, 251-252 [SD NY 2012]). As discussed above, such a conclusion is not supported here. We further disagree with Western & Southern to the extentthat our colleagues conclude that the provision fails to contain the requisite detail of an express enforcement obligation, for the reasons discussed above. 

Footnote 3: These cases are Nomura, Ambac Assur. Corp. v Countrywide Home Loans, Inc. (31 NY3d 569 [2018]), and Matter of Part 60 Put-Back Litig. (36 NY3d 342). Moreover, defendants did not raise a loan-specific or trust-specific argument in connection with those trusts requiring written notice to the trustees of an EOD.

Footnote 4: Defendants sent post-briefing letter submissions requesting this Court to take judicial notice of two cases from the Southern District of New York. As noted above, they did not avail themselves of this opportunity with respect to DLJ.

Footnote 5: The agreements in the record contain provisions substantially identical to section 8 cited above, sometimes with a different section number. They are usually titled "Duties of Trustees."